754 F.2d 855
 1 Fed.R.Serv.3d 347, 15 Envtl. L. Rep. 20,163
 UNITED STATES of America, Plaintiff,
and
Save the Dunes Council, Inc., Proposed Intervening Plaintiff-Appellant,
v.
36.96 ACRES OF LAND, MORE OR LESS, SITUATED IN the COUNTY OF
LaPORTE, STATE OF INDIANA & Northern Indiana
Public Service Company, & Unknown
Owners, Defendants-Appellees.
 No. 84-1018.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 24, 1984.
Decided Feb. 22, 1985.
 
 Donald J. Evans, Evans & Evans, Valparaiso, Ind., for plaintiff.
 Paul A. Rake, Eichhorn, Eichhorn & Link, Hammond, Ind., for defendants-appellees.
 Before BAUER, WOOD and CUDAHY, Circuit Judges.
 BAUER, Circuit Judge.
 
 
 1
 The district court denied the Save The Dunes Council's motion to intervene in the United States' condemnation action against the Northern Indiana Public Service Company. 100 F.R.D. 78. We affirm the denial of intervention.
 
 
 2
 * The land involved in this case is a 36.96 acre tract bordering the southern edge of Lake Michigan. This area, commonly known as Crescent Dune, is situated between the Indiana Dunes National Lakeshore on the west, and one of Northern Indiana Public Service Company's (NIPSCO) generating stations on the east. The condemnation action underlying this case was instituted by the United States under the authority of the Indiana Dunes National Lakeshore Act, 16 U.S.C. Sec. 460u-12, which authorized the Secretary of the Interior to acquire Crescent Dune. Section 460u-12 placed strict time and monetary limitations on the Secretary's condemnation action. Among the limitations was the requirement that the property, excluding a sea wall, could not be purchased at a cost greater than $800,000, adjusted by the Consumer Price Index and excluding administrative costs. 16 U.S.C. Sec. 460u-12. NIPSCO has owned the land since 1932, which presently is subject to a mortgage to secure various bond instruments sold by NIPSCO. In 1976, the value of the land, including the sea wall, was approximately $1,762,000.
 
 
 3
 The Save The Dunes Council is an Indiana not-for-profit corporation. The Council, a public interest group incorporated in 1952, seeks legal protection for public use of the Indiana Dunes. Since its incorporation the Council has lobbied extensively for national legislation protecting the dunes and expanding the protected areas. The Council lobbied hard for the passage of the 1976 amendments to the Indiana Dunes Act, which authorized acquisition of Crescent Dune, and prepared the base map used to determine the official boundary information for the 1976 amendments.
 
 
 4
 Although the United States' condemnation action was filed in August 1978, the Council did not move to intervene until April 1982.[1] The Council also filed a complaint for mandamus in the United States District Court for the District of Columbia and in the Northern District of Indiana against the Secretary of the Interior on October 19, 1983. These mandamus actions are still pending. On September 7, 1983, the government and NIPSCO submitted to the trial court a stipulation and joint motion to dismiss. Following briefing and a hearing on the Council's motion to intervene, the district court denied the motion.
 
 II
 
 5
 Four requirements must be met before intervention will be granted as of right. The application must be timely. The intervenor must show an interest relating to the property or transaction which is the subject of the action. The intervenor must show that the disposition may as a practical matter impair or impede the intervenor's ability to protect that interest. And, the intervenor must show that that interest is not adequately represented by existing parties. Gautreaux v. Pierce, 690 F.2d 616, 635 (7th Cir.1982). The proposed intervenors must satisfy each requirement before a court will grant the motion to intervene. CFTC v. Heritage Capital Advisory Services, Ltd., 736 F.2d 384, 386 (7th Cir.1984).
 
 
 6
 The district court found that the Council met only the first requirement of timeliness of the motion but failed to meet the other three requirements. The Council bases its challenge to the court's denial of intervention on the ground that its interest in Crescent Dune is legitimate, tangible and demonstrable, is unprotected by the parties to this action, and will be substantially impaired if the Council is denied intervention.
 
 
 7
 The district court examined the Council's alleged interest in the Crescent Dune and determined that "[w]hile the Council has played a laudatory role in the development of the Indiana Dunes National Lake Shore [sic], with respect to this tract of land, [the Council] is essentially a private citizen with no interest in the property sought to be condemned." Order at 5. Moreover, the district court determined that NIPSCO had the "paramount ... [and] only legal interest" in Crescent Dune. Id.
 
 
 8
 To obtain intervention as of right under Rule 24(a)(2), a proposed intervenor must show "a direct, significant legally protectable interest in the property or transaction subject to the action" in which intervention is sought. Wade v. Goldschmidt, 673 F.2d 182, 185 (7th Cir.1982) (per curiam) (citing Donaldson v. United States, 400 U.S. 517, 531, 91 S.Ct. 534, 542, 27 L.Ed.2d 580 (1971)). As the Wade court characterized the issue, the critical concern is not the "theoretical interests of proposed intervenors, ... 'but whether already initiated litigation should be extended to include additional parties.' " 673 F.2d at 184.
 
 
 9
 An eminent domain proceeding such as this action considers only two legal interests. The first interest is that of the sovereign to exercise the power of eminent domain, which is essential to a sovereign government, United States v. Carmack, 329 U.S. 230, 236, 67 S.Ct. 252, 254, 91 L.Ed. 209 (1946), and exercisable only by the legislature or as conferred by congressional enactment. Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 585-86, 72 S.Ct. 863, 865-66, 96 L.Ed. 1153 (1952). The second interest in an eminent domain proceeding is one of private ownership--essentially the ownership of the condemned property.
 
 
 10
 The interest of the sovereign in this case is that expressed in the Indiana Dunes National Lakeshore Act, Pub.L. 89-761, 80 Stat. 1309 (1966) (codified as amended at 16 U.S.C. Secs. 460u to 460u-23), to acquire and preserve for public use certain portions of the Indiana Dunes. This interest can be effectuated by the Secretary of the Interior only as authorized by Congress and only to the extent of appropriations from Congress. The Council cannot claim that its right to intervene derives from this sovereign authority to condemn property for public use. No entity, public or private, other than the legislature, can claim the sovereign authority to condemn property--a "direct, significant legally protectable interest"--unless Congress has delegated that authority to the party. Youngstown Sheet & Tube, 343 U.S. at 585, 72 S.Ct. at 865. Congress has not delegated such authority to the Council; the Secretary of the Interior is the only person to whom Congress has delegated the authority to condemn Crescent Dune. 16 U.S.C. Secs. 460u & 460u-12. The Council cannot, therefore, claim that its Rule 24(a) interest in the Crescent Dune is the same as that of the Secretary. Nor can the Council claim an ownership interest in the Crescent Dune. NIPSCO has the only claim to ownership of the Crescent Dune. The dune was acquired in fee by NIPSCO, together with other portions of its Michigan City, Indiana, generating station site in 1932.[2]
 
 
 11
 The Council argues, however, that on the basis of Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972), the Council's "intense concern for the National Lakeshore," Appellant's br. at 7, and "its members' personal aesthetic, conservational and recreational interest in the property," id. at 8, is a sufficient interest to allow intervention under Rule 24(a). Sierra Club is distinguishable, however, from the present case. Sierra Club arose under Section 10 of the Administrative Procedure Act (APA), 5 U.S.C. Sec. 702, and not under Rule 24(a). There is a qualitative difference between the "interest" which is sufficient for standing to bring an action under the APA and the "direct, significant legally protectable interest" required to intervene in a condemnation action. The "interest" which will satisfy Sierra Club is simply one "arguably within the zone of interest to be protected" by the statute. 405 U.S. at 733, 92 S.Ct. at 1365. The interest of a proposed intervenor, however, must be greater than the interest sufficient to satisfy the standing requirement. As the Supreme Court in Donaldson stated, the interest must be a "significantly protectable interest." 400 U.S. at 531, 91 S.Ct. at 542. This circuit has also defined the necessary interest as one that is direct, substantial, and legally protectable. Heyman v. Exchange National Bank of Chicago, 615 F.2d 1190, 1193 (7th Cir.1980).
 
 
 12
 While the Council's aesthetic and environmental interest in Crescent Dune may indeed be legitimate and demonstrable, we cannot say that it is direct, substantial, or legally protectable. Therefore, the Council's interest in "guaranteeing the preservation of [Crescent Dune's] natural beauty," Appellant's br. at 8, for public use is not the type of interest which justifies intervention under Rule 24(a). Wade v. Goldschmidt, 673 F.2d 182 (7th Cir.1982), is particularly appropriate in the present context. In Wade, several property owners brought an action against the United States Department of Transportation and the State of Illinois challenging the proposed construction of an expressway and bridge across their property. Several groups sought and were denied the right to intervene in the action. One of the groups denied intervention was an Illinois non-profit corporation formed specifically to support construction of the proposed bridge and expressway. Although Wade involved an action under the APA in which the government was a defendant, and not a condemnation action in which the government is a plaintiff, the proposed intervenors in this case nonetheless have sought, as in Wade, to assert the position of the government. In Wade, a panel of this court denied intervention because "the governmental bodies charged with compliance [with federal statutes] can be the only defendants." 673 F.2d at 185. Similarly, where a proposed intervenor in a federal condemnation suit seeks to assert a position on behalf of the government, intervention must also be denied; only the Congress or its delegate can assert the rights of the sovereign.
 
 
 13
 Similarly, Meridian Homes Corp. v. Nicholas W. Prassas & Co., 683 F.2d 201 (7th Cir.1982), suggests that the Council's interest is not "direct" in the sense contemplated by Rule 24(a). In Meridian a panel of this court upheld the denial of intervention by individuals who had an interest in one joint venturer's share of a real estate development. The court stressed that Rule 24(a) demanded "rigor in the requirement that the interest be direct and substantial." 683 F.2d at 204. The court thus held that a party with a legal right, and therefore an "interest," "only in the profits of the joint venture" is not entitled to intervene in an action where the resolution of the cause of action involved "[h]ow the profits are generated, how the joint venture is managed, or whether the joint venture continues." Id.
 
 
 14
 We therefore determine that just as the interest in Meridian Homes was not "direct and substantial," so the Council's "aesthetic and environmental interest" in NIPSCO's property is not "direct and substantial."
 
 
 15
 Accordingly, the district court's denial of the Council's motion to intervene as of right in the condemnation action below is affirmed.
 
 III
 
 16
 The Council also appeals the district court's denial of permissive intervention under Rule 24(b). Permissive intervention is wholly discretionary with the district court and will be reversed on appeal only for an abuse of discretion. EEOC v. United Air Lines, Inc., 515 F.2d 946, 949 (7th Cir.1975). The district court denied permissive intervention "in order to avoid the likelihood of undue delay and prejudice to the rights of the original parties" and to avoid prolonging "an already lengthy and tired lawsuit." Order at 6. We find no abuse of discretion in this determination.
 
 IV
 
 17
 The Council argues that our failure to allow its intervention in this condemnation action "would be to propose that no environmental group may step in to support a mandate of Congress for protection of land under the National Park System should the Department of the Interior choose not to carry out that mandate." Appellant's br. at 7. We disagree with that assertion. An action for a writ of mandamus is always available to the Council or any other citizen seeking "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. Sec. 1361. The Council obviously recognizes the possible availability of mandamus since it has filed a complaint for mandamus in both the United States District Court for the District of Columbia, Cause No. 83-3091, and in the Northern District of Indiana, Cause No. H84-0214, both filed on October 19, 1983. Although the remedy of mandamus is a drastic one to be invoked only in extraordinary situations, Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 35, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980), the Council's allegations against the Secretary of the Interior are the type for which mandamus would provide a remedy, if appropriate. See United States v. Walker, 409 F.2d 477, 481 (9th Cir.1969). We do not intend to suggest by this that the Council will be successful in its mandamus action. That success, of course, will turn on whether the condemnation action was a ministerial duty, plainly defined and peremptory, or a discretionary duty, McClendon v. Blount, 452 F.2d 381, 383 (7th Cir.1971), an issue not presently before us. Our only holding in this decision is that the Council has no right to intervene in the condemnation proceeding and that permissive intervention was properly denied.
 
 
 18
 For the above stated reasons, the district court is affirmed.
 
 
 19
 AFFIRMED.
 
 CUDAHY, Circuit Judge, dissenting:
 
 20
 The position of the majority seems to be that because the Council does not have the power to commence eminent domain proceedings, and does not claim a proprietary interest in the land proposed to be condemned, it cannot have any right to intervene. This is a myopic position unsupported by any authority. Indeed, the authority goes the other way. See Trbovich v. United Mine Workers, 404 U.S. 528, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972) (employees may intervene pursuant to Rule 24(a)(2) in suit brought by Secretary of Labor challenging union election results, even though 29 U.S.C. Sec. 483 makes Secretary's suit the exclusive remedy and prohibits the union members from initiating such a private suit); United States v. Board of School Commissioners, 446 F.2d 573 (7th Cir.1972) (requirements for intervention should be more liberal than those for standing to bring suit), cert. denied sub nom. Citizens of Indianapolis for Quality Schools v. United States, 410 U.S. 909, 93 S.Ct. 964, 35 L.Ed.2d 271 (1973); Avery v. Heckler, 584 F.Supp. 312 (D.Mass.1984) (intervenor need not have standing necessary to initiate lawsuit).
 
 
 21
 The environmental interest is never a trivial one, and the interest by Congress in acquisition by the public of the unique Crescent Dune is, as a practical matter, supported here only by the Council. The Secretary of the Interior, after interminable delay, was content to abandon efforts at acquisition in September 1983. Congress's interest in the acquisition of Crescent Dune, as expressed in the 1976 Amendments to the Indiana Dunes National Lakeshore Act, 16 U.S.C. Sec. 460u-12, must be taken seriously; the only entity prepared to represent this point of view is the Council. Certainly the Department of the Interior does not represent it.
 
 
 22
 In Sierra Club v. Morton, 405 U.S. 727, 735, 92 S.Ct. 1361, 1366, 31 L.Ed.2d 636 (1972), the Supreme Court recognized an actionable interest in "those who use [the land in question]," and further recognized, as actionable allegations, injury to " 'aesthetic, conservational, and recreational' as well as economic values." Sierra Club, 405 U.S. at 738, 92 S.Ct. at 1368 (quoting Association of Data Processing Service Organizations v. Camp, 397 U.S. 150, 154, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970)). The Council here supported its motion to intervene with an affidavit and supporting documents establishing the use by its members of the Indiana Dunes as well as its own 30-year commitment to the establishment and preservation of the Indiana Dunes National Lakeshore. Council App. 42-71; Council Br. 8.
 
 
 23
 The majority apparently concedes that the Council would have standing to maintain suit with respect to the preservation of the Dunes, but attempts to distinguish the interest required for that purpose from the interest of an intervenor in an action to condemn land for this national project. Not only is this distinction offered without any basis in authority, but it is highly formalistic. An interest in a national park surely involves an interest in acquisition of land for it and acquisition of that land may very well require condemnation. And traditional standing is sufficient interest to intervene where denial of intervention will prevent appellate review. 3B J. MOORE, MOORE'S FEDERAL PRACTICE p 24.07, pp. 24-58-24-59 (2d ed. 1984); United States v. Imperial Irrigation District, 559 F.2d 509 (9th Cir.1977), rev'd and vacated on other grounds sub nom. Bryant v. Yellen, 447 U.S. 352, 366-68, 100 S.Ct. 2232, 2240-41, 65 L.Ed.2d 184 (1980) (stating court of appeals correct in deciding respondents had standing to intervene). Similarly, standing should be sufficient interest to intervene where the government has entered a stipulation that would frustrate the will of Congress and preclude judicial consideration of the merits. Accord Cascade Natural Gas Corp. v. El Paso Natural Gas Co., 386 U.S. 129, 87 S.Ct. 932, 17 L.Ed.2d 814 (1967) (intervention of right allowed where government's settlement of antitrust suit would frustrate mandate of Court).
 
 
 24
 The sterility of the majority's approach is illustrated by its statement that "the Council's aesthetic and environmental interest in the Crescent Dune may indeed be legitimate and demonstrable, [but] we cannot say that it is direct, substantial, or legally protectable." To say that the interest is "not legally protectable" is to beg the question, for it is only through intervention that this interest can be protected.[1] On the basis of the majority's holding, whatever the Council's interest, it cannot be protected. It therefore goes without saying that the Council meets the second requirement for intervention of right since the proposed disposition will not only impair but destroy the Council's ability to protect its interest.
 
 
 25
 On the third criterion--the adequacy of the representation of the Council's interest by the Department of the Interior--the record is appallingly clear. The government has been profoundly dilatory in pursuing acquisition of the land for the public benefit and has reached an agreement with NIPSCO to desist from representing the Council's interests. Further, the Council argues rather persuasively that NIPSCO and the government have been collaborating to frustrate the will of Congress and thereby to prejudice the interests of the Council. For example, the government in the district court made no response to the Council's Motion to Intervene but allowed NIPSCO to represent its interests in the intervention proceedings. A representative party who is collaborating with an opposing party is unlikely to be adequately representing a proposed intervenor's interest. See Cuthill v. Ortman-Miller Machine Co., 216 F.2d 336 (7th Cir.1954).
 
 
 26
 With all respect, this case may involve, though we cannot really know, a flouting of the public interest in conservation and in preservation of unique natural resources. Only by allowing participation in this proceeding by an organization of proven commitment not only to conservational values in general but to the Indiana Dunes in particular can the public interest in these national treasures be protected. As Justice Douglas said in Sierra Club:
 
 
 27
 With all respect, the problem is to make certain that the inanimate objects, which are the very core of America's beauty, have spokesmen before they are destroyed. It is, of course, true that most of them are under the control of a federal or state agency. The standards given those agencies are usually expressed in terms of the "public interest." Yet "public interest" has so many differing shades of meaning as to be quite meaningless on the environmental front....
 
 
 28
 ... [T]he pressures on agencies one way or the other are enormous. The suggestion that Congress can stop action which is undesirable is true in theory; yet even Congress is too remote to give meaningful direction and its machinery is too ponderous to use very often. The federal agencies of which I speak are not venal or corrupt. But they are notoriously under the control of powerful interests who manipulate them through advisory committees, or friendly working relations, or who have that natural affinity with the agency which in time develops between the regulator and the regulated.
 
 
 29
 405 U.S. at 745-46, 92 S.Ct. at 1371-72 (Douglas, J. dissenting) (footnote omitted).
 
 
 30
 In the instant case we do not have the regulator and the regulated, but instead the condemnor and the condemnee. But the threat to the national treasure is the same. Here the interest of the Council in preserving the Dunes has been clear and ongoing since 1952. That interest has been a major force in saving the Dunes so far. It deserves to be a force in this case.
 
 
 31
 For these reasons, I respectfully dissent.
 
 
 
 [1]
 The district court found that the Council's filing did not violate the timeliness requirement of Rule 24. The parties do not contest this ruling
 
 
 [2]
 The real estate is subject to a mortgage administered by The Harris Trust and Savings Bank, Chicago, Illinois, but that mortgage is irrelevant to any interest which the Council seeks to assert
 
 
 [1]
 A claim that mandamus proceedings give the Council a method to protect its interests is a concession that the interest is legally protectable. And an interest sufficient to support mandamus proceedings would certainly be "direct and substantial."