CUDAHY, Circuit Judge.
 

 A real estate agent arranged for the sale of apartment buildings for a limited partnership that went bankrupt. A rival real estate firm objected to the agent’s receiving a commission because he had allegedly breached his fiduciary duty to the limited partnership in an unrelated transaction. In a suit between that firm, the bankruptcy trustee and the agent’s employer the Bankruptcy Court for the Northern District of Illinois determined that the agent should not receive his intended commission. After the court made this initial determination, the agent was allowed to intervene in the suit but was given no opportunity to present evidence or argument on his own behalf. Upon reconsideration of the case, the court reaffirmed the denial of the agent’s commission and instead awarded the money to the trustee in bankruptcy. The agent appealed this decision to the district court, claiming that he was deprived of his property without due process. The district court affirmed. We reverse.
 

 I.
 

 A series of limited partnerships led by the Hogan
 
 &
 
 Farwell real estate groups owned certain apartment properties in the Chicago area. The Hogan
 
 &
 
 Farwell groups filed for reorganization under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 1101
 
 et seq.
 
 Robert Ginsberg, then a professor at DePaul University Law School in Chicago, was named the trustee in bankruptcy. Ginsberg arranged for First Combined Realty Corporation (“First Combined”) to manage four of the properties on Sheridan Road in Chicago. First Combined also received the right to have an exclusive listing of the properties and was to receive a 5% commission on their sale. Until First Combined received the exclusive listing, Lebovic Realty Corp. (“Lebovic”) had that privilege.
 

 Intervenor-appellant Marvin Feiger was an employee of First Combined. He was the listing salesman for the four apartment properties. As the contact person for First Combined, Feiger helped arrange the contract sale of the 4 properties to Vranas and Associates (“Vranas”). Because the sale was under an extended payment plan rather than for cash, the trustee and First Combined agreed to a modified commission arrangement. The trustee and First Combined then went to the Bankruptcy Court for the Northern District of Illinois where they entered a petition for payment of the commission. Feiger expected to receive approximately $30,000 as his percentage of First Combined’s commission. Lebovic and Mitchell Edelson, Jr., a former member of the Hogan & Farwell groups and an employee of Lebovic, filed an objection to First Combined’s receiving its full commission,
 
 inter alia,
 
 because Feiger had allegedly breached his fiduciary duty to the debtor-limited partners in a separate transaction. Feiger had arranged with Crown Coin Meter Co. for laundry machines for two of the debtor-limited partners’ buildings for which the debtor-limited partners were allegedly overcharged. After arranging for the sale of the laundry machines, Feiger received a “gift” of $2,200. Later, the trustee filed an adversary action against Feiger, Crown Coin, its president Larry Tolman, and Commercial Coin Laundry Systems. Feiger returned the money to Crown Coin. At the conclusion of the
 
 *159
 
 adversary action, the bankruptcy judge ordered Crown Coin to turn the money over to the trustee. The trustee’s request for $5,000 in punitive damages was denied. The adversary action against Feiger and other defendants was then dismissed with prejudice.
 

 Lebovic also objected to First Combined’s commissions on the grounds that some of First Combined’s officers were not licensed real estate brokers and that Lebovic, not First Combined, had been the procuring cause of the sale to Vranas. After conducting 13 separate hearings concerning the real estate broker’s commission, the bankruptcy judge determined that First Combined should get 80% of the commission and that Lebovic, as a contributing but not procuring cause of the sale to Vranas, should get 20%. The court also ruled that Feiger’s actions had been “improper and detrimental to the best interests of the administration of the bankruptcy estates.” To “discourage such improprieties in the future,” the court ordered that no portion of First Combined’s commission should be paid to Feiger.
 
 In re 5300 North Sheridan Road Partnership,
 
 No. 81 B 08649, Slip op. at 15 (Bankr.N.D.Ill. April 27, 1984).
 

 Following this ruling of the Bankruptcy Court, Feiger petitioned to intervene. In his petition, he asked that the court vacate its order forfeiting his commission. He argued that no evidentiary hearing had determined that he had received a bribe or that the debtor-limited partners had been overcharged for the laundry machines. The court granted Feiger’s petition to intervene but denied his prayers for relief.
 

 Feiger did not move for reconsideration of the case. However, Lebovic did seek a reconsideration on several grounds. One question concerned who would get the commission that Feiger would have received but for the alleged improprieties — Lebovic, First Combined or the trustee.
 

 Because the alleged improprieties injured the debtor-limited partners, the court determined that the trustee, as their representative, was the appropriate party to receive the commission. The court modified its first order, ruling that “the order previously issued is reaffirmed in all respects except that the salesman’s share of commission which the earlier order stated should not be paid to Feiger should instead be retained by the trustee.”
 
 In re 5300 North Sheridan Road Partnership,
 
 No. 81 B 08649, Slip op. at 8 (Bankr.N.D.Ill. Aug. 31, 1984).
 

 Feiger appealed this decision to the district court. The district court affirmed stating, “In making these decisions and issuing the orders, the Bankruptcy Court had before it the evidence gained in 13 separate hearings held from August 25, 1982, totalling about 50 hours. Additionally, it had before it the evidence from a related adversary proceeding taken by the Trustee against Larry Tolman, two entities collectively known as Crown Coin Laundry and Feiger.”
 
 In Re: Paul C. Wildman,
 
 No. 85 C 163, Slip op. at 5 (N.D.Ill. April 22, 1985). In dismissing Feiger’s appeal, the court noted “he has whatever other remedies [which] may be available to him outside of bankruptcy to pursue.”
 
 Id.
 
 at 6.
 

 Feiger now appeals to this court. He claims that he was denied his commission without due process. He also argues that the dismissal with prejudice of the trustee’s adversary action made res judicata in his favor the question whether he had committed improprieties.
 

 II.
 

 The current trustee, Melanie Rovner Cohen, argues that Feiger has no standing to appeal this lawsuit. She argues that only the trustee, First Combined and Lebovic had their rights determined in the courts below and that no relief was entered against Feiger. She contends that, since the trustee’s judgment against First Combined would not bind Feiger in an action against his employer, Feiger’s proper recourse is to sue First Combined rather than enter this lawsuit.
 

 Were we viewing the case from its outset we might agree that Feiger had no stand
 
 *160
 
 ing to enter the suit. It was First Combined, not Feiger, that had the contract with the trustee. Had First Combined received nothing from the trustee and had Feiger not been mentioned in the proceedings, Feiger would have no suit against the trustee. That Feiger as the listing salesman was the beneficiary of the contract between First Combined and the trustee ordinarily would not be sufficient to allow him an interest in such a suit. Feiger’s contract was with First Combined and recourse usually would be sought against that firm.
 

 Here, however, the Bankruptcy Court determined that Feiger had standing when it granted his petition to intervene. Under Federal Rule of Civil Procedure 24(a), one has a right to intervene when four requirements are met:
 

 The application must be timely. The in-tervenor must show an interest relating to the property or transaction which is the subject of the action. The intervenor must show that the disposition may as a practical matter impair or impede the intervenor’s ability to protect that interest. And, the intervenor must show that the interest is not adequately represented by existing parties. The proposed intervenor must satisfy each requirement before a court will grant the motion to intervene.
 

 United States v. 36.96 Acres of Land,
 
 754 F.2d 855, 858 (7th Cir.1985) (cite omitted). This circuit has recognized that the interest in property required for purposes of intervention must be greater than that necessary to establish standing.
 
 Id.
 
 at 859. By granting Feiger’s petition to intervene, therefore, the Bankruptcy Court established his standing as the law of the case.
 

 Moreover, although the trustee claims that no relief was entered against Feiger, it was plainly the Bankruptcy Court’s intention to prevent Marvin Feiger from receiving his commission. In his first order, the judge stated that Feiger had committed improprieties and that to deter such deeds in the future he should lose his commission. In its second order, the court determined that the trustee rather than First Combined should receive the commission intended for Feiger. It rescinded its express ruling that First Combined could not pay Feiger but the implication that Marvin Feiger be deprived of his commission remained in force.
 

 The court took a clearly identifiable sum of money—$30,000—that was intended for Marvin Feiger and placed it with a clearly identifiable party—the trustee. The court took this action after Marvin Feiger was allowed to intervene in the suit and after the court had examined evidence accusing Feiger of improprieties. Feiger was not allowed to present evidence in his own defense. He was not permitted to confront adverse witnesses. No evidentiary hearing was held. Under these circumstances, we cannot say that Feiger was accorded due process.
 

 Additionally, the Bankruptcy Court has already received much evidence concerning what Marvin Feiger’s commission should be. All the parties who have an interest in Feiger’s conduct on behalf of the debtor-limited partners are before the court in this suit. None of these parties objected to Feiger’s intervening in the suit. On these facts, it would be a waste of judicial resources to require Feiger to bring a second suit against First Combined.
 

 III.
 

 Feiger also contends that the issue of his wrongdoing has been finally determined in his favor. After Feiger returned $2,200 that was allegedly received improperly, the lower court dismissed with prejudice the trustee’s adversary action against Feiger and his colleagues. We do not believe the dismissal with prejudice concerning Feiger’s dealings with Crown Coin operates as a finding that Feiger was innocent of the acts alleged. Nor do we believe this dismissal bars the trustee from challenging Feiger’s right to receive payment from the bankruptcy estate for unrelated transactions.
 

 
 *161
 
 The opinion below is therefore Reversed and Remanded for proceedings not inconsistent with this opinion.