COUNTY OF ST. LOUIS, County of Lake, and County of Cook, political subdivisions of the State of Minnesota; National Association of Canoe Liveries and Outfitters; Conservationists with Common Sense; Ely Outfitters Association; Grand Marais–Gunflint Trial Outfitters Association; Harvey G. Solberg, Plaintiffs,

v.

Jack Ward THOMAS, as Chief of the United States Forest Service; Michael Espy, as Secretary of the United States Department of Agriculture, Defendants,

and

Friends of the Boundary Waters Wilderness; Wilderness Watch; Wilderness Inquiry, Inc.; Sawbill Trail Outfitters Association, Movants for Intervention.

FRIENDS OF THE BOUNDARY WATERS WILDERNESS; Wilderness Watch; The Izaak Walton League of America, Inc.; The Wilderness Society; and Wilderness Inquiry, Inc., Plaintiffs,

v.

Jack Ward THOMAS, as Chief of United States Forest Service; and Richard Rominger, as Acting Secretary of Agriculture, Defendants.

Civ. Nos. 5–94–154, 5–95–10.

United States District Court,
D. Minnesota,
Fifth Division.

July 7, 1995.

584

Richard A. Duncan, Brian Boru O'Neill, Elizabeth Hendricks Schmiesing, Faegre & Benson, Minneapolis, MN, for plaintiffs.

Friedrich Anson Paul Siekert, U.S. Atty. Office, Minneapolis, MN, Michelle L. Gilbert, U.S. Dept. of Justice, Environment & Natural Resources Div., Washington, DC, for defendants.

## ORDER

ERICKSON, United States Magistrate Judge.

### I. *Introduction*

These matters came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(A) and (B), upon the filing, in Civ. No. 5–94–154, of a Motion to Intervene by various public interest groups, as well as by the Sawbill Trail Outfitters Association (hereinafter, "Movants"). Also before the Court is a joint Motion by the parties in Civ. No. 5–95–10, to consolidate that action with Civ. No. 5–94–154.

On February 24, 1994, a Hearing was held on the Motions, and the Plaintiffs in Civ. No. 5–94–154 (hereinafter, "Counties") appeared by David R. Oberstar, Esq.; the Plaintiffs in Civ. No. 5–95–10, and the Movants for Intervention appeared by Richard A. Duncan and Elizabeth H. Schmiesing, Esqs.; and the Defendants in each action appeared by Michelle L. Gilbert, Esq.

For reasons which follow, we allow the Movants to Intervene in Civ. No. 5–94–154, and we grant the Motions to Consolidate.[1]

### II. *Factual and Procedural Background*

On December 5, 1994, the Counties[2] filed a Complaint which seeks a judicial review of the Defendants' administrative decision to impose a variety of restrictions upon visitor usage of the Superior National Forest, an area which has within its geographical borders the Boundary Waters Canoe Area Wilderness ("BWCAW"). In addition, the Counties seek to enjoin the enforcement and the implementation of those restrictions by the Defendants—namely, the Chief of the United States Forest Service and the Secretary of the United States Department of Agriculture.

By way of historical background, in 1986, the United States Forest Service approved a Land and Resource Management Plan for the Superior National Forest, which contained strictures for the management of the BWCAW. A number of environmental groups challenged that Plan, by the filing of an administrative appeal, which sought a reduction in entry point quotas for the BWCAW, and reduced campsite occupancy

---

**1.** No one has opposed the Motions to Consolidate and, upon our independent review, we grant those Motions as the legal and factual issues in these two proceedings are substantially identical, they involve the same Administrative Record, and joinder will promote judicial economy and the avoidance of unnecessary costs and delay. *Rule 42(a), Federal Rules of Civil Procedure.* We are unable to discern any purpose in requiring two different District Courts to review the same Administrative Record in order to consider competing facets of the same central issue.

We caution the parties, however, that a consolidation of the cases does not merge the individual proceedings into a single action. As our Court of Appeals has recently observed, "consolidation is permitted as a matter of convenience and economy in administration, but does not merge the suits into a single cause, or change the rights of the parties or make those who are parties in one suit parties in another." *Enterprise Bank v. Saettele,* 21 F.3d 233, 235, 236 (8th Cir.1994), quoting *Johnson v. Manhattan Ry.,* 289 U.S. 479, 496–97, 53 S.Ct. 721, 727–28, 77 L.Ed. 1331 (1933). Accordingly, the consolidation of these actions does not moot the Movants' request for intervention.

**2.** In addition to the Counties of St. Louis, Lake and Cook, Minnesota, the parties we have collectively designated as the "Counties" include several for-profit or non-profit outfitter associations, as well as a non-profit public interest group, the Conservationists with Common Sense ("CWCS").

levels. Included in the public interest groups that filed the administrative appeal was the Friends of the Boundary Waters Wilderness ("Friends"), one of the Movants for Intervention here.

Following the institution of that administrative appeal, a settlement agreement was reached which included the Defendants' adoption of more stringent visitor usage restrictions for the BWCAW—a proposal which had been promoted by the Friends.[3] These restrictions included a reduction in entry point quotas, limitations on the number of watercraft that could be utilized by each visiting party, an elimination of approximately 200 campsites, and a reduction in the campsite occupancies throughout the BWCAW. In accordance with this agreement, a draft Management Plan was released for public comment in November of 1992, and was officially adopted by the Forest Service in August of 1993. A further administrative appeal—this one initiated by the Counties—resulted in an affirmance of the Plan by the Regional Forester.[4]

In commencing their action in Civ. No. 5–94–154, the Counties challenge the Defendants' actions as violative of the Boundary Waters Canoe Area Wilderness Act of 1978, *Pub.L. 95–495, 92 Stat. 1649;* the National Environmental Policy Act, *Title 42 U.S.C. §§ 4321–4361;* and the Americans with Disabilities Act, *Title 42 U.S.C. § 12101, et seq.*[5] See also, *Title 5 U.S.C. § 706.*

The Movants seek intervention, as full parties-Defendant to the Counties' action, in that they claim a general interest in maintaining and preserving the purity of the Nation's wildlife and its wilderness areas, as well as specific private business interests that would be adversely affected if the Counties should be successful in their legal action. They also claim a special interest that arises out of their personal participation in the administrative process through which the Management Plan was adopted. In addition, they maintain that their specific interests are not adequately represented by the present Defendants in these actions. Accordingly, if permitted to appear in the Counties' action, the Movants would seek the dismissal of the Counties' Complaint.[6]

While the Defendants do not oppose the proposed intervention, the Counties do, and they dispute that the Movants have interests which are sufficiently substantial to support the requested intervention or that those interests, whatever they might be, would be impaired by the resolution of the Counties' action. In addition, the Counties contend that the Movants' interests will be more than adequately represented by the Defendants, who are responsible governmental officials.

### III. *Discussion*

A. *Standard of Review.* Under Rule 24(a)(2),[7] Federal Rules of Civil Procedure, a

---

**3.** As a result of the settlement agreement, the Forest Service created a BWCAW Management Plan Task Force, which was assigned to evaluate the likely effects of the different options that were available for the management of the wilderness area. The Task Force members—which included not only the Friends, but also many of the parties we have designated as the "Counties"—assisted the Forest Service in promulgating a Record of Decision which was released for public comment in November of 1992.

**4.** The Management Plan was affirmed in all respects with the exception that the maximum number of watercraft, that would be allowable per visiting party, was increased from three to four. The Counties have challenged both quotas, however, as being arbitrary in character.

**5.** The Plaintiffs' ADA claim challenges those provisions of the Management Plan which have eliminated canoe rests, have restricted motorized vehicles except in designated areas, have mandated the removal of motors outside of motorized

zones, or have otherwise made the BWCAW less accessible to persons with disabilities.

**6.** We note, of course, that the Movants principally consist of the Plaintiffs in Civ. No. 5–95–10. In that proceeding, the Movants challenge certain other aspects of the Defendants' rulemaking; namely, those which adopted a number of exemptions to the daily motor use quotas within the BWCAW. The fact that the Movants have opposed other aspects of the Defendants' rulemaking lends some addition impetus to their Motion to Intervene, as their absence from the Counties' litigation may expose them to some risk that the Defendants could negotiate away certain of the Movants' successes in the administrative process in order to accommodate some of the Counties' other concerns.

**7.** Rule 24(a)(1), Federal Rules of Civil Procedure, permits intervention of right "when a statute of the United States confers an unconditional right to intervene." The Movants do not reference or

party has the right to intervene in an action upon timely application:

> [W]hen the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Rule 24(b)(2)[8] provides for permissive intervention by parties:

> [W]hen an applicant's claim or defense and the main action have a question of law or fact in common.... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Notably, the parties do not dispute the timeliness of the Motion to Intervene and, therefore, the issues before us resolve to whether the requested intervention is proper either as of right or permissively.

■ B. *Legal Analysis.* As the language of Rule 24(a) makes clear, one seeking intervention of right "must satisfy a tripartite test: 1) the party must have a recognized interest in the subject matter of the litiga-

tion; 2) that interest must be one that might be impaired by the disposition of the litigation; 3) the interest must not be adequately protected by the existing parties." *Mille Lacs Band of Indians v. Minnesota*, 989 F.2d 994, 997 (8th Cir.1993).

The first issue, then, is whether the Movants have a substantial interest in the subject matter of this litigation. Our Court of Appeals has held that an interest—such as would merit intervenor status—must be more than "peripheral or insubstantial; the applicant must assert a 'significantly protectable interest.' " *Planned Parenthood v. Citizens for Comm. Action*, 558 F.2d 861, 869 (8th Cir.1977), citing *Donaldson v. United States*, 400 U.S. 517, 531, 91 S.Ct. 534, 542, 27 L.Ed.2d 580 (1971).[9]

Each of the Movants claim an interest in "preserving and promoting the wilderness character of the BWCAW" by supporting the Defendants' limitations upon visitor usage of the BWCAW. *Movants' Memorandum*, at 15. This Court has previously found that private environmental and public interest groups have a sufficiently protectable interest for purposes of intervention under Rule 24(a). *Mausolf v. Babbitt*, 158 F.R.D. 143, 146–47 (D.Minn.1994); see also, *United States v. Reserve Mining Co.*, 56 F.R.D. 408, 418 (D.Minn.1972).[10] Accordingly, on those

---

rely upon any such statute, and we find this basis for intervention of right to be wholly inapplicable.

**8.** Rule 24(b)(1) allows permissive intervention "when a statute of the United States confers a conditional right to intervene." Here again, the Movants have not premised their Motion upon any statute which, conditionally, confers an intervention right, and we do not address the provisions of Rule 24(b)(1) further.

**9.** As recognized by the Supreme Court in *Diamond v. Charles*, 476 U.S. 54, 69 n. 21, 106 S.Ct. 1697, 1707 n. 21, 90 L.Ed.2d 48 (1986), the Eighth Circuit resolves questions of intervention without reference to the standing doctrine. See, e.g., *Mille Lacs Band of Indians v. Minnesota*, 989 F.2d 994, 997 (8th Cir.1993); *Planned Parenthood v. Citizens for Comm. Action*, 558 F.2d 861, 869 (8th Cir.1977). Accordingly, we do not address that doctrine, nor have the parties premised their arguments upon its applicability.

**10.** The Counties' argument that *Mille Lacs Band of Indians v. Minnesota*, 989 F.2d 994 (8th Cir. 1993), and *Sierra Club v. Robertson*, 960 F.2d 83

(8th Cir.1992), are to the contrary, is unconvincing. For example, in *Mille Lacs*, the Court found a sufficient interest in the ownership of the land upon which the propriety of the usufructuary rights of an Indian Nation were being litigated. Importantly, however, the Court did not, as the Plaintiffs suggest, establish a requirement that an interest in land or other property interest be shown in order to support a finding of a significantly protectable interest. As a consequence, the fact that "none of the Putative Intervenors claims an interest in land within the BWCAW," see, *Plaintiffs' Memorandum*, at 6, is not dispositive of the question before us. On the other hand, the specific question of whether the allowance of intervention on the basis of aesthetic, scientific or recreational interests, was squarely addressed by this Court in *Mausolf v. Babbitt*, 158 F.R.D. 143, 146–47 (D.Minn.1994), and in *United States v. Reserve Mining Co.*, 56 F.R.D. 408, 418 (D.Minn.1972), and we rely upon these precedents. But cf., *United States v. 36.96 Acres of Land*, 754 F.2d 855, 859 (7th Cir.1985), cert. denied, *Save the Dunes Council, Inc. v. United States*, 476 U.S. 1108, 106 S.Ct. 1956, 90 L.Ed.2d 364 (1986).

same grounds, we find significantly protectable interests on the part of all the Movants but, in any event, we note that two of the Movants here—namely, the Sawbill Trail Outfitters Association ("STOA") and Wilderness Inquiry, Inc.[11]—have additional, protectable commercial and financial interests, which go beyond a general public interest in the environment.[12]

Having found significant protectable interests on each of the Movants' part, we conclude that a ruling in favor of the Counties, in Civ. No. 5–94–154, would inevitably lead to an increased visitor usage of the BWCAW and would, resultantly, impair the Movants' interests that we have found protectable. *Mausolf v. Babbitt,* supra at 147.[13] Accordingly, we turn our focus to the final inquiry

under Rule 24(a)(2), and address whether the Movants' interests are adequately represented by the presence of the governmental Defendants.

Ordinarily, "parties seeking intervention need only satisfy a 'minimal burden' of demonstrating that their interests will not be adequately represented by the then current parties to the suit." *Mausolf v. Babbitt,* supra at 147, citing *Trbovich v. United Mine Workers,* 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 636 n. 10, 30 L.Ed.2d 686 (1972); *Mille Lacs Band of Indians v. Minnesota,* supra at 999. Under this final step in the analysis, the Courts determine "the adequacy of representation primarily by comparing the interests of the proposed intervenor with the interests of the current parties to the action."

11. The Movants concede that the interests of the Friends and Wilderness Watch are strictly limited to their general public interest in the aesthetic and recreational enjoyment of the BWCAW. See, *Movants' Memorandum,* at 19–20, 24, 30. See also, *Proescholdt Affidavit,* at 2, 5–6.

We note, of course, that the Friends and Wilderness Watch made substantial contributions to the administrative proceedings which preceded this action. The restrictions which the Counties challenge were adopted as a result of the Friends' initiation of an administrative appeal from the 1986 Management Plan, their engagement in negotiations, and their intervention in opposition to the proposals that the Counties were promoting in their appeal to the Regional Forester. The Friends and Wilderness Watch also had representatives on the Task Force that, ultimately, issued recommendations for the final Management Plan. The end result, according to the Counties' account, was a final Plan, which the Forest Service adopted, that was "strikingly similar to comments and proposals submitted by the [Friends]." *Complaint,* at 6.

While we find that the Movants' general aesthetic and recreational interests are sufficient for intervention purposes, our finding is further justified by the Movants' substantial participation in the underlying administrative proceedings that are being contested in each of the actions we now consolidate.

12. According to the averments of its Executive Director, which are contained in the Record before us, Wilderness Inquiry, Inc., is a profit-oriented business which provides "integrated wilderness adventures" for its clients, who seek "a true wilderness experience, rather than a wilderness trip modified for people with disabilities," and who would be less likely to utilize Wilderness Inquiry's services if the Defendants'

restrictions are sustained—resulting in a probable financial loss to the company. *Lais Affidavit,* at 2. Similarly, STOA consists of an association of two outfitting businesses, including Sawbill Outfitters, Inc., and Sawtooth Outfitters, whose financial well-being is directly tied to clients who visit the BWCAW. Unlike the other outfitting associations, who are within the "Counties" grouping, STOA believes that its clients "seek a true wilderness experience, rather than a wilderness trip marred by overcrowding and overuse of the BWCAW," and will use the BWCAW less frequently "if the BWCAW's wilderness character is compromised," which is a result that will have an adverse impact upon the participants of STOA. *Hansen Affidavit,* at 2–3; see also, *Storlie Affidavit,* at 2–3.

13. We find the Counties' argument, that the elimination of the Defendants' restrictions would simply return the BWCAW to the *status quo,* which the Movants have enjoyed for years, to be unpersuasive. The pre-existing *status quo* was the condition of BWCAW usage to which the Movants took exception and successfully sought a change.

We also disagree with the Counties' contention that the Movants' interests would not be impeded because they would have the opportunity to raise their concerns in the administrative process at such as a new environmental impact statement ("EIS") should be prepared and considered. Suffice it to say that, if the Counties are successful in their challenge to the Management Plan, then that success would surely potentiate to the detriment of those interests of the Movants that we have found to be sufficient for intervention purposes, and a challenge to some subsequent EIS may well be both untimely and ineffectual.

*Sierra Club v. Robertson,* 960 F.2d 83, 86 (8th Cir.1992).

■ When a current party to the action is a governmental entity, the "test is more exacting because of the doctrine of *parens patriae.*" *Mausolf v. Babbitt,* supra at 147. This doctrine presumes that the government will adequately represent the general public interests of its citizenry. *Mille Lacs Band of Indians v. Minnesota,* supra at 1000; *Environmental Defense Fund, Inc. v. Higginson,* 631 F.2d 738 (D.C.Cir.1979). Accordingly, we have previously held that a showing of a general interest in the aesthetic, scientific and recreational preservation of public land—while a protectable interest for intervention purposes—does not establish, without more, an interest which would not be adequately protected by a governmental party who is already involved in the action on the same side as that desired by the putative intervenor. *Mausolf v. Babbitt,* supra at 147–48.

However, here the Movants seek to distinguish *Mausolf* by arguing—with respect to STOA and the Wilderness Inquiry, Inc.— that there are special, private interests at stake, which will not be adequately protected by the governmental Defendants. We agree. The presumption of adequate representation by a governmental party is often rebutted by a showing of "individual interests not shared by the general citizenry." *Mille Lacs Band of Indians v. Minnesota,* supra at 1001. As a consequence, private interests, such as an interest in property, in property valuations or in financial interests, may not be adequately protected by the Government's status as *parens patriae. Id.; Planned Parenthood v. Citizens for Comm. Action,* supra at 870. Here, STOA and the Wilderness Inquiry have identified specific, proprietary interests which may not be adequately protected by the governmental Defendants, much like the private property owners' interests which were recognized, in the *Mille Lacs Band of Indians* case, as having adequately rebutted the presumed adequacy of the government's *parens patriae* representation. Accordingly,

we grant the Motion of STOA and of the Wilderness Inquiry to intervene.

With respect to the remaining Movants—the Friends and Wilderness Watch—we find the issue·to be closer but, nevertheless, we note a sufficient special interest which rebuts the adequacy of the government's representation of their interests. Unlike the proposed intervenors in *Mausolf,* who had made no showing that they had actively participated in the underlying administrative process, and who approached the judicial appeal of that process as would any other publicly interested citizen, here the Friends and Wilderness Watch invested time, effort and money in obtaining certain of the administrative relief that they had requested.

■ While the administrative decision, that is being judicially challenged in these proceedings, is sufficiently final so as to permit judicial review, the decision has not concluded the matter and the interests that the Friends and Wilderness Watch have fostered remain in jeopardy of modification until such time as the judicial review proceedings are final. Unlike the general population, which may well share certain of the perspectives of the Friends and Wilderness Watch, these organizations invested private resources to accomplish goals that they had privately set. Absent their participation in the Counties' action, so as to further shield the goals, that they had nurtured throughout the administrative proceedings, the Friends and Wilderness Watch may not be in a position to effectively preserve an appeal of any determination, adverse to their interests, that the Court might render, nor would they have access, let alone legal standing, to participate in any settlement negotiation which might imperil or otherwise erode the successes that they have obtained to date. Since the limitations on visitor usage of the BWCAW were largely, if not wholly, of their genesis, we hold that the Friends and Wilderness Watch have special interests, advanced through the private investment of resources, which are not wholly represented by the governmental Defendants and which warrant their inter-

vention in the Counties' action.[14]

NOW, THEREFORE, It is—

ORDERED:

1. That the Motion of the Movants for Consolidation and for Intervention [Docket No. 4 in Civ. No. 5–94–154; Docket No. 2 in Civ. No. 5–95–10] is GRANTED.

2. That the Defendants' Motion for Consolidation [Docket No. 13 in Civ. No. 5–94–154; Docket No. 11 in Civ. No. 5–95–10] is GRANTED.

3. That, until further Order of the Court, Civ. No. 5–94–154 and Civ. No. 5–95–10 shall be consolidated for all purposes.

---

**14.** Lastly, we would note that, even if we concluded that the Movants were not entitled to intervene as a matter of right, we would hold that they should be permissively allowed to intervene. We see little prospect for appreciable delay and no likelihood that their participation in Civ. No. 5–95–10 will prejudice any other party should the Movants be granted leave to participate. In the interests of judicial economy, a final disposition of the administrative challenges presented in these consolidated actions is most readily achieved by a single decision on all pending issues as they relate to the competing interests of all of the parties.