**Margot M. BACHMAN, J. Henry and Mary Esther Dasenbrock, Robert L. Duncan, Audrey K. Levy, Bruce E. Long, Robert B. and Caryl L. Wolf, Plaintiffs,**

**Estate Chocolate Hole Landowners Association, William B. and Theresa A. Nelligan, Plaintiffs-Intervenors,**

v.

**Edward HECHT, Arsene Massac, Kurt A. Morcher, Heidi K. Morcher, and all Record Owners of Real Estate in Area of St. John, U.S.V.I., known as Estate Chocolate Hole, Defendants.**

Civ. A. No. 85–22 (SSB).

District Court, Virgin Islands,
D. St. Thomas and St. John.

Dec. 31, 1986.

Defendant at the Pascagoula, Mississippi, Police Department.

Robert B. Wolf, pro se.

Dudley & Topper by George H.T. Dudley, St. Thomas, V.I., for plaintiffs.

Herbert Muriel, Charlotte Amalie, V.I., for defendant Arsene Massac.

Henry V. Carr, III, St. Thomas, V.I., for defendant Edward Hecht.

Jewel L. Cooper, St. Thomas, V.I., for proposed intervenors Great Cruz Bay Development Co., Inc. and Circle Investments.

BROTMAN, District Judge, Sitting by Designation:

Plaintiffs bring this "Action to Quiet Title" regarding a land development known as Estate Chocolate Hole on St. John, United States Virgin Islands. Plaintiffs are subdivision landowners: Margot M. Bachman, J. Henry and Mary Esther Dasenbrock, Robert L. Duncan, Audrey K. Levy, Bruce E. Long, Robert B. and Caryl L. Wolf. Plaintiff-intervenors are Estate Chocolate Hole Landowners Association, and William B. and Theresa A. Nelligan. Defendants are Edward Hecht, the purchaser of plot 127B; Arsene Massac, the original grantor in all the subdivision deeds; Kurt A. Morcher and Heidi K. Morcher, the owners of plot 127A, and all record owners of real estate in the area of St. John, United States Virgin Islands, known as Estate Chocolate Hole ("ECH").

By settlement agreement dated June 10, 1985 ("Settlement Agreement"), between the ECH Landowners Association, Inc. and defendant Massac, the majority of issues raised in the complaint were resolved.

Among other provisions, that agreement gave the ECH Landowners Association title to plots 186 and 103. It also provided that defendant Massac could sell any remaining plots in no less than one-half acre parcels and with the single-dwelling household restriction contained in the deed. Settlement Agreement at ¶¶ 2(d), 3, 6. The only remaining issue before this court is the controversy over the allowable use of plot 127B.[1]

Presently before the court are several motions. Great Cruz Bay Development Co., Inc. and Circle Investments moved to intervene as of right. Plaintiffs moved for summary judgment regarding plot 127B, and defendant Hecht cross-motioned for summary judgment. Defendant Hecht moved to amend his counterclaim against plaintiffs and to amend his crossclaim against defendant Massac. The court will decide the motions in the above order.

*Summary of Facts*

Defendant Arsene Massac acquired an interest in several hundred acres of land comprising an area known as Estate Chocolate Hole, St. John, U.S.V.I. Massac planned the area to be a large, primarily residential subdivision with two hundred plots. He sold lots from 1958 to the present, using a printed form of deed prepared by him, and a series of plans. (The deeds and plans appear as Exhibits to the Complaint.) From the submissions and arguments of the parties, it appears that the first subdivision plan was recorded in the

---

1. In 1984, Massac divided plot 127 (1.76 acres) into two plots—127A (.5 acres) and 127B (1.26 acres). In June, 1984, Massac conveyed plot 127A to defendants Heidi and Kurt Morcher. On July 25, 1984, Massac conveyed plot 127B to defendant Edward Hecht. By settlement agreement dated June 25, 1986 between plaintiffs and the Morchers, plaintiffs released the Morchers of any and all claims set forth in the complaint. Plaintiffs have apparently released defendant Massac from the claim that plot 127 was illegally subdivided. Plaintiffs stated that, according to the pretrial order, the only remaining issue in the case concerns the status of plot 127B. *See* Memorandum of Plaintiff Wolf in Reply to Support by Defendant Massac of Motion to Intervene ("Wolf's Reply Memorandum") at 3. As the legality of subdividing plot 127, and the usage of plot 127A are no longer issues in the

case, the court will only address the issues surrounding plot 127B.

In February, 1986 when the parties moved for approval of the settlement agreements, Judge Christian decided that no court action was necessary to endorse the settlements. Parties are free to enter into any arrangement and as a result choose to withdraw from the court's consideration any issues no longer in controversy. The settlement agreements appear to settle all issues except the status of plot 127B. This court agrees with Judge Christian that no court action is needed to validate the settlements in this case.

The limiting of the scope of this opinion to the controversy involving plot 127B should not be interpreted as an endorsement of the settlement agreements nor a statement as to their legality.

office of the Recorder of Deeds, St. Thomas, U.S.V.I., on April 21, 1960. *See* Complaint at ¶ 14, citing Ex. 1. An earlier plan was filed not in the office of deeds but at the Department of Public Works, St. Thomas, U.S.V.I. prior to sale. *See* Massac's Memorandum in Opposition to Summary Judgment.

All of the deeds, except the one for the hotel on plot 126 and the 1984 deed to defendant Hecht, include a clause restricting each plot to build only one single family dwelling. The deeds all say that the other deeds in the subdivision are bound by the same covenants and restrictions. The deeds also contain an easement for use by all the subdivision landowners of certain land areas in the subdivision. One such easement involves plot 127.

The crux of this controversy is as follows. By deed dated July 25, 1984, Massac conveyed plot 127B to defendant Edward Hecht. Hecht wants to build a ten unit condominium complex on plot 127B. *See* Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment ("Plaintiffs' Memorandum) at 4; Complaint Ex. 9. Plaintiffs seek to prevent Hecht from doing so. Plaintiffs also want the court to declare that they have either title in Hecht's entire plot or have an easement to use Hecht's entire plot as a recreational area.

The deed from Massac to Hecht contains a clause that states, "The Grantor reserves for himself and for the landowners of the Chocolate Hole Subdivision a right of way with a width of fifteen (15) feet from the estate road along with western boundary, which separates parcel 127B from parcel 126, to the beach." Complaint Ex. 8. The controversy focuses not on this easement, but on the language in the deeds of every other subdivision landowner stating that they have an easement to use all or some portion of plots 103, 186 and 127. Hecht's original intent for purchasing the plot was to erect on it a condominium complex. Massac was informed of Hecht's intentions beforehand and the price for the plot was well above the prices for the other "residential" plots. Hecht was aware (and even admits prior knowledge) of the potential difficulties he could have with this project, namely that the restriction for single family dwelling could be held to apply to him. Hecht consulted several attorneys about this prior to purchasing the plot and was reassured that the restriction did not apply to his land. *See* Admissions Nos. 1, 6, and 8 quoted in Plaintiffs' Memorandum at 10.

## I. *Motion to Intervene*

In June, 1986, Great Cruz Bay Development Co., Inc. ("GCBD") and its affiliate, Circle Investments ("CI"), a general partnership, consisting solely of David L. Allen and Herold Williams, ("Intervenors") jointly moved for leave to intervene as of right in the above captioned matter. For the reasons set forth below, the court will deny their motion.

### *Discussion*

The movants seek to intervene under Fed.R.Civ.P. 24(a)(2) which states that:

Upon timely application anyone shall be permitted to intervene in an action ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

The intervenors' claim that they have an interest in this litigation as owners of property in the GCBD—plot 300A and plot 6— and have entered a contract to purchase plots 479 and 480, Guinea Gut (twenty acres), in the Estate Chocolate Hole Development ("ECHD"). They claim that the Settlement Agreement entered into among the parties will impair their rights.

The court denies the motion for three reasons, each of which is a sufficient ground for denial. First, the intervenors have no valid interest in the only remaining controversy in the case—the status of plot 127B. Second, they have no valid interest in the issues already resolved by the Settlement Agreement of June 10, 1985. Finally, the motion to intervene is untimely.

### 1. *Interest in Plot 127B*

■ The Settlement Agreement along with the other settlement agreements in the case resolved the vast majority of issues raised in the complaint. The parties sought court approval of this agreement, but in February, 1986, the court decided that there was no need for it to take any action regarding the settlement. After the settlement arrangements, the only remaining issue in the case concerns plot 127B.

The intervenors in their motion claim no interest in plot 127B. The plots owned by intervenors are nowhere near plot 127B, nor would the movants be affected by the court's ruling regarding 127B. Accordingly, it is clear that movants are not interested parties regarding this current controversy.

### 2. *Interest in Issues Covered by the Settlement Agreement*

■ Intervenors argue that GCBD, because it abuts ECHD, will be affected by the Settlement Agreement that confirms restrictions on the plots in the ECHD.

Plaintiffs and intervenors alike agree that from the start, GCBD was considered a neighboring development, separate from the ECHD. *See* Memorandum in Opposition to Motion to Intervene ("Opposition Memorandum") at 3; Intervenors Proposed Answer ("Answer") at 7. The covenants and restrictions contained in the more than seventy deeds to the plots in ECHD were not contained in the deeds to GCBD plots. Answer at 5–6. Plaintiffs have never contested the fact that the GCBD plots are free from the restrictions contained in ECHD deeds. Opposition Memorandum at 3–4. As the intervenors' plots 6 and 300A are both in the GCBD area, none of the restrictions in the Settlement Agreement apply to these plots.

While a landowner may be concerned about the goings on in an abutting property, such concerns do not rise to the level of a legal interest requiring the court to allow intervention as of right. As owners of plots 300A and 6 in GCBD, the intervenors do not have a legal interest that requires protection through the device of intervention.

Movants also claim a right to intervene because they have a contract to buy lots 479 and 480 in ECHD. It is undisputed that these plots are in the ECHD and that the Settlement Agreement does restrict usage of these plots. In particular, the Settlement Agreement prevents defendant Massac from selling land in these plots other than for residential purposes, and in no less than one-half acre lots with the single-dwelling restriction found in all the other deeds in the development. Settlement Agreement ¶¶ 3, 6. This restriction on the Guinea Gut plots can be altered by a two-thirds vote of the Board of Directors of ECH Landowners' Association.

After signing the Settlement Agreement, Massac entered into a contract with intervenor Circle Investments. The contract entered into is perfectly consistent with the Settlement Agreement. Under the contract, Circle Investments will pay a purchase price of one million dollars to Massac for parcels 479 and 480 if, and only if, the Landowners' Association agrees to allow Circle Investments to develop the plot as it plans. If after one year, the Landowners' Association does not approve of the development proposal, the contract "shall become null and void" and "buyers shall be entitled to a refund of their earnest money with accrued interest." Reply Memorandum, Attachment at 3.

The intervenors claim that because of this contract, they have a legal interest in these plots directly affected by the Settlement Agreement, thus requiring intervention. The court does not agree. The Settlement Agreement was signed on June 10, 1985. The intervenors were aware of its existence and terms prior to the contract with Massac to buy 479 and 480. According to the uncontested affidavit of plaintiff Wolf, when Wolf spoke with intervenor Williams regarding the contract of sale and Williams' awareness of the settlement Wolf states that "His reply was that he had seen the settlement agreement and that no judge would enforce the restriction." Affidavit of Robert Wolf at 4.

The intervenors had no interest in this lawsuit. Long after the suit began and long after the bulk of it was settled, the movants entered into an agreement with one of the parties to put themselves in the position of being interested parties whose interest was affected by the suit.

It appears that despite numerous presentations to the Landowners' Association of its proposed plan, intervenors have been unable to persuade the Board to accept its plan for development. As an alternative route, movants seek to intervene into this suit to upset the settlement. While it is true that the settlement does affect a current interest of the intervenors—their interest in plots 479 and 480—the intervenors became involved with those plots fully aware of that signed agreement and its potential effect. The contract itself was clearly written with an eye to the restrictions on those plots.

The rule allowing intervention as of right was aimed to allow persons with a prior recognizable legal interest to join in a suit to protect that interest. It was not created as a device to be manipulated by entities having no interest in a suit to enable them to purchase an interest after substantial resolution of a case and then claim that their rights in that property will go unprotected if they are not allowed to join and disrupt an essentially settled case.

### 3. The Motion is Untimely

■ Fed.R.Civ.P. 24(a) states that as a requirement to intervention the motion must be timely.

This case was filed in January, 1985. Notice of the suit was published in the *Daily News* for six weeks after filing. *See* Opposition Memorandum at 4. The Settlement Agreement was signed on June 10, 1985. In the winter of 1985, the movants negotiated with Massac to purchase plots 479 and 480. Opposition Memorandum at 5. Notice of a public court hearing to approve the settlement was published in the local paper for three weeks prior to the date of the hearing on the settlement, in February, 1986. *Id.* at 11.

In 1985 the intervenors were informed of and shown a copy of the Settlement Agreement. *Id.* at 12. On January 1, 1986, movants entered into a sale agreement of plots 479 and 480. From early 1986 to date, the Landowners' Association has had ongoing discussions with Williams regarding his proposed development of Guinea Gut.

Despite their thorough knowledge of the existence and terms of the Settlement Agreement since 1985, the intervenors did not move to intervene until the end of July, 1986. Such filing is over a year and a half after the commencement of the suit and over one year after the bulk of the suit (and the part even remotely connected to the movants) was formally resolved.

The Third Circuit in *Pennsylvania v. Rizzo*, 530 F.2d 501 (3d Cir.), *cert. denied*, 426 U.S. 921, 96 S.Ct. 2628, 49 L.Ed.2d 375 (1976), set forth the factors to examine when considering the timeliness of a motion to intervene:

> 1) [H]ow far the proceedings have gone when the movant seeks to intervene; 2) prejudice which resultant delay might cause to other parties; and 3) the reason for the delay.

*Rizzo, supra,* at 506 (citing *NAACP v. New York,* 413 U.S. 345, 365, 93 S.Ct. 2591, 2602, 37 L.Ed.2d 648 (1973)).

The proceedings in this case have gone on for more than a year and a half. The parties, having negotiated and signed a complex settlement over a year ago, would be significantly prejudiced by intervention of additional parties to disrupt that settlement at this late a date. Finally, movants offer no justification for the delay in filing their motion to intervene.

For the above reasons, the court will deny the motions of Great Cruz Bay Development Co., Inc. and Circle Investments to intervene as of right in this action.

### II. Motion for Summary Judgment

The standard for granting summary judgment is a stringent one. Fed.R.Civ.P. 56(c) provides that summary judgment may be granted only when the materials of record "show that there is no genuine issue

as to any material fact and that the moving party is entitled to judgment as a matter of law." *Hersh v. Allen Prod. Co., Inc.*, 789 F.2d 230, 232 (3d Cir.1986); *Lang v. New York Life Insurance Co.*, 721 F.2d 118 (3d Cir.1983). In deciding whether an issue of material fact does exist, the court is required to view all doubt in favor of the nonmoving party. *Meyer v. Riegel Prod. Corp.*, 720 F.2d 303, 307 (3d Cir.1983); *Knoll v. Springfield Township School District*, 699 F.2d 137, 145 (3d Cir.1983); *Smith v. Pittsburgh Gage and Supply Co.*, 464 F.2d 870, 874 (3d Cir.1972).

Despite the stringency of the above standard, in a recent opinion, the United States Supreme Court stated, "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, — U.S. ——, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (citations omitted).

The court has before it the following record. Plaintiffs submitted numerous documents including deeds and subdivision maps as exhibits to the complaint, a memorandum of law supporting summary judgment ("Plaintiffs Memorandum"), an affidavit of Mr. J. Henry Dasenbrock, and a reply memorandum in support of motion of summary judgment ("Plaintiffs Reply Memorandum"). Defendant Hecht submitted a memorandum of law opposing plaintiffs' motion for summary judgment and supporting his motion for summary judgment. Defendant Massac, who opposes summary judgment, submitted an affidavit from a surveyor, Charles A. Hamilton, maps of the subdivision, and an affidavit from Etienne Massac.

After carefully reviewing these documents and considering the arguments of the parties, the court holds that there is no genuine issue of material fact in dispute. The court is thus able to resolve the questions of law presented by the parties.

1. *Plaintiffs' Property Interest in Defendant Hecht's Plot 127B*

■ Plaintiffs claim that the Landowners' Association has title to, not simply an easement to use, plot 127B. They argue that the language stating their interest says "grant;" that it is a grant of an easement "to use" not "over" certain plots; and that the language does not specify the exact length and width of an area as most easements do. The court finds these arguments unpersuasive. The language in the deeds grants an *easement* to use certain beaches. While it would have been helpful if width and length measurements were specified, this and the above points of plaintiffs do not transform their easement into a grant of title to the land.

■ Plaintiffs argue that the Landowners' Association has title in plot 127 because of the clause in the deeds, THIRD(2). That clause merely states that the "landowners' association [is] to be formed for the purpose of *caring for* all recreational areas and roadways dedicated to the subdivision and for apportioning the expenses thereof fairly and proratably among all landowners in the subdivision." (emphasis added). That clause provides no basis for giving title to those areas to the Landowners' Association. There is no deed of sale under which the Association purchased recreational plots. Plaintiffs, thus, only have an easement. This easement is set forth in each deed to the various plaintiffs beginning with the first deed in 1958 (Complaint Ex. 1) and included in subsequent deeds. *See, e.g.*, Complaint Exs. 6B and 7.

Finally, in plaintiffs' Reply Memorandum they respond to defendant Massac's argument that in a motion for summary judgment it is inconsistent for plaintiffs to contend that they have both title and an easement. Plaintiffs essentially concede that they do not have title—"In the instant case, plaintiffs assert an easement granted by deed, and do not insist on title." Plaintiffs' Reply Memorandum at 2.

Massac was free to transfer his title to plot 127B. The new owner of that plot, however, could only purchase it subject to the easement that all of the subdivision property owners had over that plot.

## 2. The Applicability of the Single Family Dwelling Restriction to Plot 127B

There is no question that defendant Hecht had both actual and constructive notice of the other deeds and the covenants therein before he purchased plot 127B. When a common grantor includes a restrictive covenant in one plot and covenants that all other plots in the plan will also be bound by the same restriction, the recording of the deed to one purchaser is constructive notice of all of its provisions, including the covenant, as restrictions on all subsequent deeds. This is true even if subsequent deeds do not contain the restrictions. *See Finley v. Glenn*, 303 Pa. 131, 154 A. 299 (1931); *Sanborn v. McLean*, 233 Mich. 227, 206 N.W. 496 (1925); J.E. Cribbet, *Principles of the Law of Property*, 350–51 (1975). In this case not only did Hecht have constructive notice, but he admits that he was aware of the restrictions contained in prior deeds. *See* Plaintiffs' Memorandum at 10.

Each deed contains the following restriction: "THIRD (4): There shall not be constructed, erected or placed upon any plot in the subdivision more than one single-family, private-dwelling house with attached or detached servants' quarters and one guest house." Complaint Exs. 1, 4, 5, 6A, 6B, 6C. The parties disagree as to whether this restriction applies to plot 127B. "Interpretation of a contract is a . . . question of law for the courts." *Fox v. HUD*, 680 F.2d 315, 319 (3d Cir.1982); *see Mailey v. Rubin*, 388 Pa. 75, 130 A.2d 182 (1957). It is proper for this court to interpret the written agreement and decide whether this restriction applies to plot 127B. Although the language of the restriction states that it applies to "all" subdivision plots, a careful analysis of the deed as a whole, in conjunction with the subdivision maps, reveals that the single dwelling restriction does not apply to plot 127B.

■ The court notes that it does not agree with a reason offered by defendants as to why the single dwelling restriction does not apply to plot 127B. Defendants argue that the restriction does not apply to plot 127 because the zoning law has zoned that area commercial. The court disagrees with this contention. The development was started in 1958 and zoning was not established in the Virgin Islands until 1972. Zoning ordinances at variance with covenants do not modify or supercede the covenant restrictions. *See* Thompson, *On Real Property* 29 (1981 Supp.); Kratovil, *Real Estate Law* 370 (1974).

■ The court holds that the single dwelling restriction does not apply to plot 127B for several reasons. Essentially, plot 127 has always been classified as different from most of the other plots in the subdivision. First, the deeds grant the purchasers easements, to be shared with all the other subdivision owners over plots 127, 186, and in some deeds over plot 103. *See* Complaint Ex. 1, clause FIRST. Second, on the first map recorded in 1960 (Complaint Ex. 2A), several plots are marked, distinguishing them from the rest. Plot 103 is labeled "park", lot 126 is marked "hotel site", 186 is labeled "park and beach area", and plot 127 is designated "yacht club site." Given that the recorded map is incorporated into the deeds as the subdivision plan, it certainly puts purchasers on notice that plot 127 is not in the same category as the other residential plots. In an unrecorded subdivision plan dated 1961 (Complaint Ex. 2B), plots 103 and 127 are marked as "community beach plots." In a 1962 unrecorded subdivision map (Complaint Ex. 2C), plot 127 is marked "community beach plot" as well as "yacht basin."

Third, the deeds themselves at THIRD, ¶ (7) (Complaint Exs. 1, 4, 5, 6A, 6B, and 6C) state "Except on lots designated commercial there shall be no manufacturing, merchandising, or conduct of any trade, or business within the subdivision. . . ." Plaintiffs note that this clause does not explicitly except "lots designated commercial" from the single dwelling restriction contained in THIRD ¶ (4). This clause does indicate, however, that there would be some plots designated commercial to which certain general subdivision rules would not apply. Obviously if the grantor is allowing "manufacturing, merchandising, trade or business" to occur on plots marked com-

mercial, he could not then be limiting them to single family houses. It is of interest that according to plaintiffs, the two hundred lots including those zoned commercial (except lots 126 and 127B), were sold with the clause restricting use to single family dwellings. *See* Plaintiffs' Memorandum at 12. Fourth, to interpret the single dwelling restriction to apply to every plot would not make sense given that each map states, for example, that plot 126 is a "hotel site" which obviously cannot be a single family dwelling.

Finally, a look at the size and location of plot 127 supports the interpretation that the single dwelling restriction does not apply. Plot 127 is adjacent to plot 126, reserved for a hotel, and 127 is larger than most of the other plots. According to defendant Hecht, "parcel No. 127, consisting of three (3) acres, was substantially larger than the other parcels being offered for sale as residential plots which ranged in size from ½ to ⅔ to an acre."

### 3. *The Scope of Plaintiffs' Easement Over Plot 127*

■ Defendant Hecht agrees that plaintiffs have an easement on his plot. He claims they have an easement over the beach on the plot and he defines beach as "the area over which water ebbs and flows." A Virgin Islands statute, the Open Beach and Shoreline Act under Chapter 10 of 12 V.I.C. § 402 (1971), defines "beach" as "the area along the coastlines of the Virgin Islands from the seaward line of low tide, running inland a distance of 50 feet; or to the extreme seaward boundary of natural vegetation which spreads continuously inland; or to a natural area whichever is the shortest distance." The court need not decide which if either definition of "beach" applies to this easement because the court holds that plaintiffs have an easement over the entire plot 127B.

The easement is worded in the deeds as follows: "an easement to use, in common with other owners in said subdivision, members of their immediate families and household guests, the beaches designated on the Plan of Subdivision of Estate Chocolate

Hole as Plots No. 103, No. 127, and No. 186, for such use at Hart's Bay and Chocolate Hole." Complaint Exs. 1, 4, 6A, 6B. A 1963 deed grants the purchasers "a perpetual easement to use in common with other owners in the subdivision of Estate Chocolate Hole, ..., together with members of their immediate families and household guests, *the beaches designated as Plots No. 103, No. 127, and No. 186* at Chocolate Hole and Hart Bay on said Subdivision Map of Estate Chocolate Hole aforementioned." Complaint Ex. 7.

The wording of these grants ("beaches ... *designated as* Plots No. 103, No. 127 and No. 186") implies that the entire plots are subject to the easement. It is clear that an interpretation of this language as granting subdivision owners an easement over the entire plot (of 103, 127 and 186) was seen as a danger by Hecht and Massac because the 1984 deed to Hecht changes the easement language (it appears to be the only deed to do so) to read "an easement to use ... the beaches *situated* in Plots No. 127A, 127B and 186 as per Plan of Subdivision ..." Complaint Ex. 8. Such a change reveals an awareness that a plausible interpretation of the prior language is that the entire area of parcel 127 would be subject to the easement.

The court holds that the subdivision landowners have an easement over the entire plot 127B for the following reasons. First, plot 127 has been classified with plots 186 and often 103 in the clause establishing the easement. Plaintiffs state in their Reply Memorandum that "as to Plot No. 103 and Plot No. 186, it is agreed by all parties that there exists an easement to use those two plots in their entirety." Plaintiffs' Reply Memorandum at 9. This indicates that plot 127 was meant to be treated similarly, and an easement over the entire plot for the benefit of the subdivision was the intended use. Second, although the easement states that it covers the "beaches" designated as those plots, a look at the topography of plot 186 reveals that "beach" was never meant to be read literally as limiting the easement simply to the sandy area. Every subdivision map lists plot 186 as park and beach area and there is no suggestion that

the easement only covers the beach and not the park. Third, the deed does refer to "recreational area." *See* THIRD (7). While these recreational areas are not specifically labeled as such, it is reasonable to assume they are plots 103, 186, and 127.

Finally, to hold that the easement only covers the "beach" on plot 127 creates many questions which the parties appear not to consider. First, it would be unclear when the measurement of beach should be made. Is the easement over the beach as it existed on plot 127 in 1958? Today? Second, even if it was decided that the beach was measured as of today, the parties disagree as to what area is considered beach. The affidavit of Etienne Massac (the son of the grantor) states that "There is no beach on Plot No. 127." Affidavit of Etienne Massac at 3. A survey was done at the order of defendant Hecht by C.A. Hamilton & Associates, Inc. on September 5, 1984. Mr. Charles Hamilton, the surveyor, stated in an affidavit that "my survey and my observations of the aforementioned property revealed that there was a sandy beach the maximum depth of which was about fifteen (15) feet and the length of which was approximately seventy-five (75) feet." Affidavit of Charles Hamilton at 2. *See* Massac's Opposition to Motion for Summary Judgment.

If it is true, as Massac contends, that "there is no beach on Plot 127," that only gives further support for the holding that if the language of the easement is to have any meaning, it must establish an easement over the entire parcel of plot 127. Again, although the court's analysis of the language of the deeds applies to both plots 127A and 127B, the court's holding only involves plot 127B.

4. *Defendant Hecht's Proposal to Build the Condominium Complex on Plot 127B*

■ Defendant Hecht purchased plot 127B subject to the above described easement over the entire parcel. While Hecht has valid title to plot 127B, he cannot interfere with the easement which existed over that plot at the time he purchased it. As the subdivision landowners have an easement to use the entire plot 127B as a recreational plot, Hecht cannot build a condominium complex on that plot as that would deprive the easement owners of their rightful use. Further, he cannot even build a single dwelling on that plot unless he has the consent of every landowner in the subdivision (or an appropriate representative), as each have been granted an easement over his property. The court will enter an appropriate order.

III. *Defendant Hecht's Motions to Amend*

Defendant Hecht moved pursuant to Fed.R.Civ.P. 15(a) for leave to amend his answer to include a counterclaim against plaintiffs. Hecht characterizes this counterclaim as "a claim for disparagement and slander of title to real estate." Given the above decision in favor of plaintiffs, the court will deny Hecht's motion.

Defendant Hecht also moved pursuant to Fed.R.Civ.P. 15(a) for leave to amend his crossclaim against defendant Massac. Hecht seeks "to include a demand for consequential damages to cover his alleged commercial losses and for punitive damages" and "to clarify the factual allegations and legal theories." The court's decision today does not dispose of the crossclaim by Hecht against Massac. Further, Massac offers no argument as to why leave to amend should not be granted. The court will thus grant Hecht's motion to amend the crossclaim against Massac.

ORDER

This matter having come before the court on Plaintiffs' Quiet Title Action; and

This court having considered the arguments and submissions of the parties; and

For the reasons stated in this court's opinion filed this date;

On this 31st day of December, 1986, the Court ORDERS that

1. The motion of Great Cruz Bay Development Co., Inc. and its affiliate, Circle Investments, for leave to intervene is hereby DENIED with prejudice.

2. The motion of defendant Edward Hecht to amend his answer to include a

counterclaim against plaintiffs is hereby DENIED with prejudice.

3. The motion of defendant Edward Hecht to amend his crossclaim against defendant Arsene Massac is hereby GRANTED.

4. In interpreting the deeds in the Estate of Chocolate Hole Development, the court hereby finds that:

a. Lot 127B is not subject to the single dwelling restriction which applies to most of the other plots in the subdivision.

b. The deeds did not grant the Estate Chocolate Hole Landowners' Association title to plot 127B but each landowner in the subdivision has an easement to use the entire area of lot 127B for recreational use as determined by the Estate Chocolate Hole Landowners' Association.

c. Defendant Hecht cannot construct the planned condominium complex on plot 127B as that would interfere with the easement.