**UNITED STATES of America, Plaintiff–Appellee,**

v.

**DETROIT INTERNATIONAL BRIDGE COMPANY, Defendant–Appellee,**

**Walter H. Lubienski and Commodities Export Company, Proposed Intervenors–Appellants.**

No. 92–1687.

United States Court of Appeals, Sixth Circuit.

Argued April 30, 1993.

Decided Oct. 12, 1993.

Rehearing Denied Nov. 3, 1993.

498

Katherine L. Adams (argued and briefed), U.S. Dept. of Justice Environment & Natural Resources, Donald F. Rosendorf, U.S. Dept. of Justice Land & Natural Resources, Div., Washington, DC, for U.S.

Dale W. Rhoades (argued and briefed), Rhoades, McKee, Boer, Goodrich & Titta, Grand Rapids, MI, for Detroit Intern. Bridge Co.

Walter H. Lubienski (briefed), Lubienski, Lubienski & Lubienski, Detroit, MI, Roger E. Craig (argued and briefed), Naples, FL, for Commodities Export Co. and Walter H. Lubienski.

Before: MERRITT, Chief Judge; and KEITH and SUHRHEINRICH, Circuit Judges.

KEITH, Circuit Judge.

Proposed Intervenors–Appellants, Walter H. Lubienski ("Lubienski") and Commodities Export Co. ("Commodities"), appeal the district court's decision denying their motion to intervene and their motion for a preliminary injunction in a condemnation proceeding involving Plaintiff–Appellee, the United States of America ("United States") and the Detroit International Bridge Company ("DIBC"). For the reasons stated below, we **REVERSE** the decision of the district court.

**I.**

This case arises from a 1979 condemnation proceeding initiated by the United States, as

to land owned by the DIBC. The land at issue is located near the Ambassador Bridge in Detroit, Michigan, which connects Detroit to Windsor, Ontario, Canada. The United States sought DIBC's land for the purpose of expanding a Customs cargo facility, located adjacent to the Ambassador Bridge. On May 21, 1991, the United States (through the General Services Administration) entered into a settlement agreement with DIBC concerning the 1979 condemnation proceedings. This settlement agreement is entitled "GSA–DIBC Memorandum of Agreement" (the "MOA"), and was executed by the United States and DIBC on March 28, 1991, and May 21, 1991.

Commodities operates a duty-free store on the Detroit side of the Ambassador Bridge. Lubienski owns a parcel of land near the Ambassador Bridge which is the subject of a separate condemnation proceeding. On December 30, 1991, Commodities and Lubienski filed motions in district court to intervene and for a preliminary injunction against the implementation of the MOA. Commodities and Lubienski contend that the MOA contemplates the condemnation of their land. On April 6, 1992, the district court denied both motions. On May 29, 1992, Commodities and Lubienski filed a Notice of Appeal with this Court. On appeal, they challenge the district court's denial of their motions to intervene and for preliminary injunction. These issues are discussed seriatim below.

## II.

Applying the standards set forth in the Federal Rules of Civil Procedure 24 ("Rule 24"), the district court ruled that Commodities and Lubienski were not entitled to either intervention as of right or permissive intervention. Rule 24 provides, in pertinent part:

(a) **Intervention of Right.** Upon timely application anyone shall be permitted to intervene in an action (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

(b) **Permissive Intervention.** Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common.... In exercising its discretion the court shall consider whether intervention will unduly delay or prejudice the adjudication of rights of the original parties.

As the district court correctly noted, to qualify for intervention as a matter of right, Commodities and Lubienski must show four things:

1) an interest related to the property or transaction which is the subject of action;

2) that the disposition of the action may, as a practical matter, impair or impede the intervenor's ability to protect that interest;

3) that the intervenor's interest is not adequately represented by existing parties; and

4) that their application to intervene is timely

(R211: Opinion and Order of Trial Court, p. 6). This Court held in *Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir.1989), that "failure to meet one of the [four] criteria will require that the motion to intervene be denied." The district court ruled that Commodities and Lubienski failed to meet the four requirements for intervention as of right.

We review the court's ruling on intervention as of right *de novo*, except for the timeliness requirement which we review for an abuse of discretion. *Id.*

### A.

■ Relying on *Donaldson v. United States*, 400 U.S. 517, 531, 91 S.Ct. 534, 542, 27 L.Ed.2d 580 (1971), the district court stated that in order to satisfy the first requirement, "a proposed intervenor must show '*a direct, significant legally protectable interest* in the property or transaction subject to the action' in which intervention is sought."

(R211: Opinion and Order of Trial Court, p. 6) (emphasis in original). Applying the *Donaldson* test, the district court concluded that "it is clear that Commodities and Lubienski do not have such a 'direct, legally protectable interest' in the Segoian/DIBC property which is at issue in the instant action to entitle them to intervention as of right." *Id.* at 8.

Commodities and Lubienski are seeking to intervene in this action because they object to the MOA entered into between DIBC and the United States. The MOA provides, in pertinent part:

(1.1) The "GSA Site" means an area for an expanded Federal clearance facility that is generally bounded by Porter Street on the north, 20th Street on the east, Fort Street on the south, and the general vicinity of the Bridge span and Bridge plaza on the west, including the Overland Site as defined in paragraph (1.3).

(1.2) The "Expanded GSA Site" means an area including the GSA Site and additional land to the north and east of the GSA Site as set forth on the Approved Plan. Acquisition by GSA of the Expanded GSA Site represents the extent of GSA's land acquisition under the terms of this Agreement. It is the intention of the parties that future modification(s) of Federally-owned clearance facilities shall occur within the boundaries of the Expanded GSA Site.

(1.3) The "Overland Site" is the property which is the subject of the existing litigation between the United States of America and DIBC. This property is generally described as being south of Porter Street, north of Howard Street, west of 20th Street and east of 21st Street, excluding four lots in the northeast corner of the block. . . .

(1.9) "Approved Plan" shall be defined to mean the plan to be developed by GSA, and acceptable to DIBC under the terms and conditions of this Agreement. The Approved Plan shall incorporate land within the Expanded GSA Site and provide for an enlarged Federal clearance facility.

(6.1) GSA has been authorized to acquire the property defined as the GSA site. GSA shall act promptly to acquire and develop the Expanded GSA Site subject to compliance with applicable laws. . . .

(R203: GSA–DIBC Memorandum of Agreement, pp. 2–3, 5, 10).

The terms of the MOA indicate that it is designed to operate as the final judgment regarding the 1979 condemnation proceedings between the United States and DIBC. The MOA provides, in pertinent part:

This Memorandum of Agreement ("Agreement") is made between the United States of America, acting by and through the General Services Administration ("GSA"); and the Detroit International Bridge Company ("DIBC"), and its successors and assigns, and is made to set forth certain principles to be applied in resolving an eminent domain lawsuit now pending between the parties hereto, United States of America v. Certain Land Situated in the City of Detroit, et. al., Civil No. 79–73934, United States District Court, Eastern District of Michigan. This Agreement envisions, is intended to lead to, and shall be part of the considerations for settlement of the lawsuit by a stipulation and further agreements of the parties incorporating the principles set forth herein.

(8.4) It is understood by the parties that all agreements between GSA and DIBC as consideration for settlement of this litigation are subject to the review of the Attorney General and although settlement by utilizing said Agreement will be recommended, entry of a stipulation cannot be guaranteed. It is further understood that DIBC shall not be bound by this Agreement until and unless GSA is so bound. GSA agrees to negotiate in good faith with DIBC to achieve satisfactory compliance with or overcome any legal objections that the Attorney General may have to this Agreement.

(R203: GSA–DIBC Memorandum of Agreement, pp. 1, 29)

The United States concedes that the MOA "provides for the future condemnation of an area which includes property owned by Commodities." (United States' Opposition to Motion to Intervene, p. 7,5). In their motions to intervene and for a preliminary injunction,

Commodities and Lubienski explained their interest in this action:

6. There are three condemnations pertaining to this case. The first is this case which stems from 1979. The second started towards the end of 1900 and was to expand the 1979 site to include land bounded by Porter on the north, 20th Street on the east, Fort Street on the south, and the Ambassador Bridge on the west. The third is in the Environmental Assessment stage and is an L-shaped wedge of land extending north of Porter to the east-west alley between 21st and 20th Streets which line is extended to Ste. (sic) Anne Street and then south to Fort Street. Commodities and Lubienski are the principal landowners in the strip of land north of Porter in the third condemnation. Lubienski also owns land in the second condemnation which abuts and is south of Porter.

7. The three condemnations together are to constitute the site of the US Customs Cargo Inspection Facility. Although other federal agencies are involved, Customs is the key decision and policy maker for these condemnations. The third condemnation, unlike the first and second which were initiated by the General Services Administration ("GSA") acting for Customs, was proposed to GSA by DIBCO.

(R203: Motion to Intervene, pp. 2–3).

The United States and DIBC argue that Commodities and Lubienski have no "interest relating to the property or transaction which is the subject of this action" because the subject matter of this action is limited to the land and the parties involved in the original 1979 complaint. We disagree. The MOA clearly provides for the condemnation of Commodities and Lubienski's property and serves as a final settlement of the 1979 condemnation action. Therefore, we believe Commodities and Lubienski have a "direct, significant legally protectable interest" in the condemnation proceedings between the United States and DIBC.

**B.**

■ We now turn to the second requirement for intervention as of right. Here, we must determine whether the disposition of the condemnation proceedings between the United States and DIBC, as a practical matter, impairs or impedes Commodities' and Lubienski's ability to protect their interests. *See Fed.R.Civ.P.* 24(a).

The district court held that "Commodities has not demonstrated how the condemnation of the subject property would impair its interest in its duty free shop ... and that Lubienski already has a forum to contest the condemnation of its property by virtue of the on-going condemnation suit pending before Judge Zatkoff." (R211: Opinion and Order of Trial Court, p. 8–9). The court went on to state that even if Commodities and Lubienski's interests would be impaired by the disposition of this action, "the terms of the proposed settlement agreement themselves adequately protect Commodities and Lubienski's interests." *Id.*

We do not believe the terms of the MOA protects Commodities and Lubienski's interests when it provides for the condemnation of their land, and is subject to being implemented without their input or approval. In fact, Commodities and Lubienski would be unfairly disadvantaged if their land is condemned by the United States before being given the opportunity to assert their interests in this matter. This result would place Commodities and Lubienski at a serious disadvantage, because once a condemnation suit is commenced, they would have no constitutional right to a hearing on questions relating to necessity and expediency. *See Bragg v. Weaver,* 251 U.S. 57, 58, 40 S.Ct. 62, 63, 64 L.Ed. 135 (1919). Therefore, we hold that the disposition of the condemnation proceedings at issue would impair the ability of Commodities and Lubienski to protect their interest.

**C.**

■ To satisfy the third requirement for intervention as of right, Commodities and Lubienski must show that their interests in this action are "not adequately represented by existing parties." *Fed.R.Civ.P. 24.* In *Stadin v. Union Elec. Co.,* 309 F.2d 912 (8th Cir.1962), *cert. denied,* 373 U.S. 915, 83 S.Ct. 1298, 10 L.Ed.2d 415 (1963), the Eighth Cir-

cuit stated that the inadequate representation requirement may be shown in the following manner:

> [B]y proof of collusion between the representative and an opposing party, by the representative having or representing an interest adverse to the intervener, or by the failure of the representative in the fulfillment of his duty.

*Id.* at 919. We find the Eighth Circuit's reasoning helpful in determining whether Commodities and Lubienski's interest are adequately represented by any of the parties involved in the condemnation proceedings between the United States and DIBC.

The following pleadings from Commodities and Lubienski's motion to intervene demonstrates that their interests are not adequately represented by the existing parties in this action.

2. The defendant Detroit International Bridge Company ("DIBCO") owns the Ambassador Bridge and formerly the Overland Freight Terminal which is the chief piece of land constituting the subject matter of this condemnation suit. The same people—the Manuel J. Moroun family—who own and control DIBCO also own the Ammex duty-free store on the Ambassador Bridge which is in direct competition with Commodities. Commodities is Ammex's only competitor. The Ammex duty-free store at the Detroit–Windsor Tunnel has no competition. According to articles published in the Detroit *News,* May 19–21, 1991, Moroun controls a $550 million fortune. See attached chart from page 14A, Sunday Detroit News, May 19, 1991, which shows the Ambassador Bridge and Ammex as Moroun holdings.

3. Over the past few years, Commodities has rebuffed offers to sell out from Moroun representatives.

4. Duty-free stores are supervised by the US Customs Service ("Customs"). Since March, 1988, Commodities and Customs have been involved in bitter litigation against each other. Background to this litigation is to be found in the Sixth Circuit's decision in *Commodities Export Co v US Customs Service,* 888 F.2d 431 (6th Cir 1989) (sic)....

7. The three condemnations together are to constitute the site of the US Customs Cargo Inspection Facility. Although other federal agencies are involved, Customs is the key decision and policy maker for these condemnations. The third condemnation, unlike the first and the second which were initiated by the General Services Administration ("GSA") acting for Customs, was proposed to GSA by DIBCO.

(R203: Motion to Intervene, pp. 2–3)

It is clear from Commodities and Lubienski's motion to intervene that neither the United States nor DIBC will adequately represent their interests in this action. Accordingly, we find that Commodities and Lubienski have satisfied the third requirement for intervention as of right.

**D.**

■ As for the timeliness of Commodities and Lubienski's motion to intervene, the district court stated that it was "not satisfied that the proposed intervenors have established that they had no way of learning of the proposed agreement before December 1991 so as to render the instant December 30, 1991 motion to intervene timely." We review this decision for an abuse of discretion.

The Ninth Circuit's decision in *Legal Aid Soc. of Alameda Co. v. Dunlop,* 618 F.2d 48 (9th Cir.1980), is helpful in reviewing the district court's ruling on the timeliness question. The *Dunlop* Court held that "[a]ll of the circumstances of a case must be considered in ascertaining whether or not a motion to intervene is timely under Fed.R.Civ.P. 24." *Id.* at 51. We believe the district court failed to consider all of the circumstances of this case in ruling on the timeliness of Commodities' and Lubienski's motion to intervene.

The MOA is dated March 28, 1991. Commodities and Lubienski filed their motion to intervene on December 30, 1991. In their motion to intervene, they concede that they were aware of "talk and speculation in the media about an agreement between DIBCO and GSA," but that they were unaware of the "actual terms of the agreement" or the fact that the agreement "was to settle this partic-

ular lawsuit" until December 9, 1991. (R203: Motion to Intervene, p. 3). Commodities and Lubienski also stated in their motion that during their negotiations with GSA they "were told by Michael Gelber, the GSA project manager for the third condemnation, that no plan was final yet and that GSA would consider alternate plans proposed by Commodities." *Id.* Lubienski also filed a motion to compel discovery of certain documents regarding the condemnation proceedings involving his land. *Id.* at 4. The United States objected to this request on May 1, 1991, on the grounds that the documents sought were not relevant to the condemnation proceeding. *Id.* Lubienski argues that had the United States complied with his discovery requests, he "would have discovered the existence of [the MOA] and would have been able to move for intervention earlier." *Id.*

In ruling on the timeliness of Commodities and Lubienski's motion to intervene, the district court focused on Lubienski's contention that he would have filed for intervention earlier had the United States disclosed the MOA pursuant to his discovery request. The district court dismissed this argument by stating that there is "no indication when [Lubienski's] motion was filed." (R211: Opinion and Order of Trial Court, p. 10). The court minimally addressed the timeliness issue in its written opinion, merely stating that it was "not satisfied that the proposed intervenors have established that they had no way of learning of the proposed agreement before December 1991 so as to render the instant December 30, 1991 motion to intervene timely." *Id.* We think the court's analysis and consideration of the circumstances surrounding this case was inadequate and falls below the *Dunlop* standard. Our review of the relevant circumstances indicates that neither Commodities nor Lubienski were delinquent in filing their motion to intervene. Accordingly, we hold that the district court abused its discretion in ruling that Commodities and Lubienski's motion to intervene was untimely.

Commodities and Lubienski's motion to intervene satisfies the four requirements for intervention as of right. Therefore, we re-

verse the district court's ruling and remand for the court to enter an order permitting intervention.

## III.

The district court denied Commodities and Lubienski's motion for preliminary injunction. We review the district court's decision for an abuse of discretion. *See International Resources, Inc. v. New York Life Ins. Co.,* 950 F.2d 294, 302 (6th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2941, 119 L.Ed.2d 565 (1992).

In determining whether the district court abused its discretion in denying Commodities and Lubienski's motion for preliminary injunction we must consider four factors:

1) Whether the plaintiffs have shown a strong or substantial likelihood or probability of success on the merits;

2) Whether the plaintiffs have shown irreparable injury;

3) Whether the issuance of a preliminary injunction would cause substantial harm to others;

4) Whether the public interest would be served by issuing a preliminary injunction.

*Mason County Medical Ass'n v. Knebel,* 563 F.2d 256, 261 (6th Cir.1977).

Because we hold that Commodities and Lubienski are entitled to intervention as a matter of right, the question of whether they are also entitled to a preliminary injunction must be reconsidered. Therefore, we reverse the district court's decision denying the motion for a preliminary injunction and remand for the court to reconsider this motion in light of our decision granting intervention.

## IV.

For the foregoing reasons, we **REVERSE** the decision of the district court and **REMAND** for proceedings consistent with this opinion.

MERRITT, Chief Judge, concurring.

I concur in the court's opinion but write separately in order to reinforce the court's conclusion with additional considerations. Essentially, the court below held that Com-

modities and Lubienski do not have a sufficient interest in the outcome of the case to justify intervention. This is a question of standing,[1] and the district court relies heavily on standing cases in reaching its decision. The court places primary reliance upon *United States v. 36.96 Acres of Land,* 754 F.2d 855 (7th Cir.1985), which held that "[t]he interest of a proposed intervenor ... must be greater than the interest sufficient to satisfy the standing requirement." *Id.* at 859. The district court also cites *New Orleans Public Service, Inc. v. United Gas Pipe Line Co.,* 732 F.2d 452 (5th Cir.1984), *cert. denied,* 469 U.S. 1019, 105 S.Ct. 434, 83 L.Ed.2d 360 (1984) ("a party has no standing to assert a right if it is not his own"). The court's unstated reliance on the standing doctrine is mistaken in two respects. First, the Sixth Circuit does not require an applicant for intervention to have standing to sue. Second, if the district court had properly determined the scope of the lawsuit, it would have held that Commodities and Lubienski do have standing.

The Supreme Court has not decided whether a party seeking intervention under Rule 24 must establish Article III standing, and the courts of appeals have reached different conclusions. *See Diamond v. Charles,* 476 U.S. 54, 68–69, n. 21, 106 S.Ct. 1697, 1706–1707, n. 21, 90 L.Ed.2d 48 (1986). The Seventh Circuit has held that in a condemnation suit an applicant for intervention must establish an interest greater than that necessary for standing. *36.96 Acres of Land,* 754 F.2d 855. The district court relies heavily upon *36.96 Acres of Land* in reaching its decision that Commodities and Lubienski do not have a legal interest sufficient to warrant intervention. The Sixth Circuit does not, however, follow *36.96 Acres of Land.* This court has held that "a party seeking to intervene need not possess the standing necessary to initiate a lawsuit." *Purnell v. City of Akron,* 925 F.2d 941, 948 (6th Cir.1991). Although *Purnell* involved applicants whose standing was conditioned upon their ability to establish paternity, the court relied upon cases not involving contingent standing:

*Trbovich v. United Mine Workers,* 404 U.S. 528, 536, 92 S.Ct. 630, 635, 30 L.Ed.2d 686 (1972) ("Intervention by union members in a pending enforcement suit, unlike initiation of a separate suit, subjects the union to relatively little additional burden.") (citing with approval Shapiro, Some Thoughts on Intervention Before Courts, Agencies, and Arbitrators, 81 Harv.L.Rev. 721, 726 (1968) ("the case or controversy limitation should impose no barrier to [an applicant for intervention's] admission")), and *United States Postal Service v. Brennan,* 579 F.2d 188, 190 (2d Cir. 1978) ("there was no need to impose the standing requirement upon the proposed intervenor").

Even if standing to bring suit were required, the district court's characterization of Commodities and Lubienski's motion to intervene as an attempt to interfere with the government's efforts to condemn the property of Logoian and DIBC is inaccurate. Rule 24(a) allows intervention as a right to an applicant claiming "an interest relating to the property or transaction which is the *subject of the action* and the applicant is so situated that the *disposition of the action* may *as a practical matter* impair or impede the applicant's ability to protect that interest." (emphasis added). The subject matter of an action is not limited by the complaint. *Linton by Arnold v. Commissioner of Health and Envir.,* 973 F.2d 1311 (6th Cir.1992), is an example of a case in which a court's disposition of an action expands the scope of the lawsuit beyond the complaint. *Linton* was initiated and tried on a single issue, but applicants were allowed to intervene after the court adopted a plan raising new issues of interest to the applicants for intervention. *Id.* at 1318. Another example is provided by *Bachman v. Hecht,* 659 F.Supp. 308, 311 (D.V.I.1986), cited by the district court, in which the Virgin Islands court considered not only the applicants' interest in the "only remaining controversy in the case," the status of a plot of land, but also the applicants' interest in other issues resolved in a settlement agreement. If the district court ap-

---

1. The related question whether the issues raised by Commodities and Lubienski are ripe for adjudication was not addressed by the district court, nor have the parties raised the issues on appeal. We do not, therefore, address the ripeness issue.

proves the proposed settlement agreement in this case, its "disposition of the matter" may "as a practical matter" impede Commodities and Lubienski's ability to protect their interest *in their own land.* Commodities and Lubienski obviously have standing to assert their interest in their own land.

The ruling of the court below on timeliness seems to be based upon mere passage of time, an insufficient basis for denying a motion to intervene. *See, e.g., Bank of America v. Hotel Rittenhouse Assocs.,* 844 F.2d 1050, 1056 (3d Cir.1988).

> In considering whether an application is timely, a court should consider five factors: (a) the point to which the suit has progressed; (b) the purpose for which intervention is sought; (c) the length of time preceding the application during which the applicant knew or reasonably should have known of its interest in the case; (d) prejudice to the original parties due to the failure of the applicant to apply promptly for intervention upon acquiring the knowledge of its interest; and (e) any unusual circumstances of the case.

*Linton by Arnold v. Commissioner of Health and Envir.,* 973 F.2d 1311, 1317 (6th Cir. 1992).

In *Linton,* this court reversed a district court ruling that an application for intervention was untimely. *Linton* involved a challenge to Tennessee's implementation of the Medicaid Act. The district court held that Tennessee's policy violated the Act, and ordered the state to submit a plan redressing the violation. The court adopted the state's plan in its entirety. Twenty-five days after entry of final judgment, and two and a half years after the suit was brought, six nursing homes moved to intervene to appeal the judgment. The district court denied the motion as untimely. The court of appeals reversed, holding that the applicants had no reason to intervene prior to the district court's adoption of the state's plan because they were "not privy to the terms and conditions" of the state's plan until it was filed with the court and did not know until entry of final judgment that the court would adopt the plan in its entirety. There is no evidence in the record before us that Commodities and Lubienski were privy to the terms and conditions of the MOA prior to December 9, 1991, when they obtained a copy of the agreement through a Freedom of Information Act request. The *Linton* court also based its decision upon "unusual circumstances militat[ing] in favor of intervention." The action had been initiated on a single issue that implicated the interests of only one of the movants; it was the broader terms of the new plan which implicated the interests of the other applicants. *Id.* at 1318. The instant case was also initiated on a limited issue which did not directly concern the applicants; it was the more comprehensive settlement agreement which gave rise to Commodities and Lubienski's interest in the case.

The circuit's permissive approach to intervention is supported by the reasoning of the district court in *In re Acushnet River & New Bedford Harbor,* 712 F.Supp. 1019 (D.Mass. 1989):

> On these facts, this Court refuses to hold the application untimely as a matter of law. To do otherwise would promote a sort of prophylactic intervention whereby parties would be compelled to intervene in matters simply to protect their rights to participate in those matters downstream on the more or less remote chance that a party apparently protecting the intervenors' interests might someday betray them. Such a result would obviously be expensive and inefficient.

*Id.* at 1023–24. This reasoning applies as well to parties who do not know that the outcome of settlement negotiations will be to their detriment (or will even concern them at all). Commodities and Lubienski's interest in the original condemnation suit was so remote that if they had tried to intervene before the terms of the proposed settlement were known, the district court would likely have held that they had no legally protectable interest in the case. *See* R211: Opinion and Order of Trial Court, p. 8 (holding that because Commodities and Lubienski do not have a direct interest in the property at issue in the condemnation suit, they do not have direct, legally protectable interest).

Considering all of the factors set out in *Linton, supra* p. 504, I agree that the district

**506**

court abused its discretion in ruling that Commodities and Lubienski's motion to intervene was untimely. The suit had progressed to settlement, which was the earliest point at which the applicants could challenge the settlement agreement. Intervention was sought for the legitimate purpose of challenging a settlement agreement which prejudices the interests of the applicants. There was no evidence to contradict the applicants' proof that they acted promptly upon learning of their interest in the case. Any prejudice to the original parties caused by the applicants' intervention does not result from the applicants' "failure to apply promptly for intervention upon acquiring the knowledge of [their] interest." Finally, there are "unusual circumstances" in this case: the action as originally filed concerned only the property of Logoian and DIBC, but the subject matter of the case was expanded by the MOA which contemplates condemnation of the applicants' land as well.